**STATE of Missouri, Respondent,**

v.

**Thomas O'CONNELL, Appellant.**

No. 68668.

Supreme Court of Missouri,
En Banc.

March 17, 1987.

Rehearing Denied April 14, 1987.

Donald L. Wolff, Clayton, for appellant.

William L. Webster, Atty. Gen., Kevin B. Behrndt, Asst. Atty. Gen., Jefferson City, for respondent.

ROBERTSON, Judge.

Appellant, Thomas F. O'Connell, was convicted in a jury-waived trial, Cause No. 491084, of one count of stealing $150 or more by deceit in violation of § 570.030, RSMo Cum.Supp.1984, for which he received a two-year sentence. Subsequently, appellant waived jury trials in three additional causes, Nos. 493426, 497928, and 511542, involving a total of 28 counts of stealing by deceit from other victims.[1] The

---

1. In Cause No. 493426, appellant was charged with eight counts of stealing by deceit; in Cause No. 497928, he was charged with seven counts of stealing by deceit; in Cause No. 511542, he

parties stipulated that the evidence for these causes would be the same as that presented to the court in Cause No. 491084. Appellant was found guilty on all counts and sentenced to two years confinement in each of the three causes. His appeal from this and the first judgment and sentence were consolidated for disposition in the Court of Appeals for the Eastern District.

On appeal, appellant contends, among other things, that the information charging him with stealing by deceit was insufficient because it failed to state all of the essential facts necessary to comprise the offense. The Eastern District noted a conflict between its case, *State v. Doering,* 708 S.W.2d 792 (Mo.App.1986), and the Southern District's *State v. Voyles,* 691 S.W.2d 452 (Mo.App.1985). Based on this conflict, the Eastern District transferred the case to us. Rule 83.02. We affirm the judgment in Cause No. 491084 and dismiss and remand Cause Nos. 493426, 497928, and 511542 with directions.

**I.**

In two of his four points on appeal, appellant contends that the trial court erred in overruling his motion for judgment of acquittal for the reason that the State failed to make a submissible case of stealing by deceit.

When a criminal defendant waives trial by jury, the findings of the court have the force and effect of a jury verdict. Rule 27.02(b); *State v. Ruff,* 618 S.W.2d 722, 723 (Mo.App.1981). On review, we accept as true the evidence supporting the verdict, together with all reasonable inferences therefrom and ignore evidence and inferences to the contrary. *State v. Williams,* 623 S.W.2d 552, 553 (Mo.1981); *Ruff,* 618 S.W.2d at 723. Under this standard, we conclude that the State made a submissible case.

The evidence presented in Cause No. 491084 showed the following: On September 20, 1982, appellant purchased a 1980 brown two-door Ford Mustang Ghia from Norbert Ruch, co-owner of Midwest South County Auto Sales in St. Louis. At the time of the sale, a title and odometer statement were prepared. Mr. Ruch testified that he was well acquainted with appellant from previous business transactions, and that appellant signed the odometer statement in his presence. The odometer statement listed the Mustang's mileage as 58,750.

On December 16, 1982, Mr. Jack Carlson, responding to a newspaper advertisement, visited appellant's residence in Kirkwood, Missouri, to look at the 1980 Ford Mustang Ghia. Appellant was not home, and Carlson spoke to Mrs. O'Connell, who told him that the Mustang had belonged to her father in Indiana and was obtained from an estate sale after his death. Shortly thereafter, appellant arrived in the Mustang. The car bore Indiana license plates. Carlson test drove the Mustang for 10–15 minutes and noticed that the odometer registered approximately 31,000 miles. After discussing the price, Carlson paid appellant $4,575 for the car and drove it off. Carlson experienced trouble with the Mustang immediately and subsequently spent approximately $1,000 on repairs.

The State introduced certified copies of Indiana and Missouri title histories of the Mustang.[2] The Indiana history included an application for certificate of title in Indiana, showing the applicant's name to be Tom O'Connell, with a Carmel, Indiana address; the lien owner to be Tom O'Connell of Kirkwood, Missouri; and the seller to be South County Auto of St. Louis. The application indicated that the Mustang had been inspected by a Patrolman Dierdorf, of the Terre Haute, Indiana Police Department on September 20, 1982. Patrolman Dierdorf testified, however, that he never inspected the Mustang, that he did not sign a certificate of title for appellant, and that the signature on the title application was

---

was charged with thirteen counts of stealing by deceit.

**2.** Both the Indiana and Missouri title histories referred to a 1980 Ford, vehicle identification number OFO4A113258. There is no dispute that the same automobile is referred to in both title histories.

not his. The odometer reading was stated on the application as 31,543. The Indiana history was accompanied by a Reassignment by Registered Dealer form, showing that on the date of sale from South County Auto, the odometer reading was listed as 58,713 miles.

The Missouri title history showed that the Indiana certificate of title was assigned from a Tom O'Connell to a Jack R. and/or Virginia Carlson on December 16, 1982. The odometer reading on the assignment papers was 31,543 miles.

Appellant argues that the evidence was insufficient in that the State failed to prove: 1) that appellant knew or should have known that the mileage on the Mustang was incorrect; 2) that appellant made a representation to Jack Carlson concerning the mileage; and 3) that appellant appropriated currency of $150 or more as a result of any misrepresentation.

■ Appellant relied on the testimony of Gordon Pleus, Administrative Systems Manager for the Federal Bureau of Prisons at the U.S. Penitentiary in Terre Haute, Indiana, to show that appellant was in federal custody from June 30, 1982, until November 18, 1982, and therefore could not have been in St. Louis to purchase the Mustang from Norbert Ruch, to sign the odometer statement, or to make out the application for title in Indiana on September 20, 1982.

Accepting the State's evidence as true, appellant's signature on the odometer statement raises a strong inference that he knew the actual mileage of the Mustang was 58,750. As to the Indiana title application, Patrolman Dierdorf testified that if his signature for an inspection was forged, an Indiana certificate of title could be obtained through the mail without ever transferring the car itself to Indiana. This evidence indicates that whether appellant was actually in federal custody or not is irrelevant to the fact that he signed an application for and received an Indiana certificate of title showing an odometer reading of 31,543 miles for the same car he had just purchased which he knew registered 58,750 miles. Further, the evidence showed that appellant was present when Carlson purchased the Mustang, and that the assignment papers signed by appellant indicated the mileage to be 31,543. The knowledge element was established.

■ Appellant contends that the evidence was insufficient to prove that he made a representation to Jack Carlson concerning the mileage on the Mustang because again, he did not know that the mileage had been altered, and because he did not discuss mileage with Carlson. We have found the evidence sufficient to prove appellant's knowledge. Jack Carlson testified that while he did not remember whether the advertisement indicated the mileage on the Mustang, he did remember discussing the subject while at appellant's residence. Even assuming that appellant did not directly state to Carlson that the car had only 31,000 miles on it, he did not reveal to him that the car actually registered 58,750 miles when he bought it from South County Auto months before. He did, in fact, sell a vehicle registering a mileage that was incorrect. The evidence is sufficient to prove that a representation was made.

■ On the issue of the amount appropriated by appellant from Carlson, the State relied on testimony from Carlson, Ruch, and Detective Donald Hearst. Ruch and Hearst were both experienced in determining the value of used cars. Ruch testified that a Mustang Ghia would be worth $1,000 less with 58,000 miles as opposed to 31,000. Detective Hearst also indicated $1,000 as the price difference. Accepting this evidence as true, the court could find that appellant appropriated at least $150 from Carlson.

## II.

Appellant next challenges the sufficiency of the State's information charging him with stealing by deceit under § 570.030.

The information upon which appellant was tried[3] read as follows:

3. Following original indictment, appellant filed a motion for a bill of particulars; the State

The Grand Jurors of the County of St. Louis, State of Missouri, charges [sic] that the defendant in violation of Section 570.030, R.S.Mo., acting with others, committed the class C Felony of stealing, punishable upon conviction under Sections 558.011.1(5) and 560.016, RSMo in that, on or about December 16, 1982, at approximately 12:00 noon, at 447 Windsor Spring, Kirkwood, in the County of St. Louis, State of Missouri, the defendant appropriated U.S. Currency, which said property was in the possession of Jack Carlson, and defendant appropriated such property from Jack Carlson and with the purpose to deprive victim thereof by deceit, to wit: in that the defendant and another made a material representation to said victim, to wit: that an automobile had mileage of 31,543 when in fact this was not true, and in reliance thereon, said victim purchased said automobile from defendant and others.

Appellant contends that the information is inadequate to charge him with stealing by deceit under § 570.030 because it contains no specific allegation that he did not believe the mileage shown on the odometer to be true,[4] and thus failed to state all the essential facts necessary to comprise the offense. Appellant relies on *State v. Kesterson*, 403 S.W.2d 606 (Mo.1966), to support his argument. The issue presented to this Court on transfer is whether the *Kesterson* requirement that all elements of "deceit" be specifically charged is still controlling in light of the fact that the term "deceit" is now statutorily defined. We hold that it is not.

■ The purpose of an indictment or information is to inform the accused of charges against him so that he may prepare an adequate defense and to prevent retrial on the same charges in case of an acquittal. *State v. Gilmore*, 650 S.W.2d 627, 628 (Mo. banc 1983); *State v. Lewis*, 642 S.W.2d 627, 630 (Mo. banc 1982). The

test for sufficiency of an indictment is "whether it contains all essential elements of the offense as set out in the statute [creating the offense] and clearly apprises defendant of facts constituting the offense." *State v. Brown*, 660 S.W.2d 694, 698 (Mo. banc 1983). As a general rule, it is enough "to charge the offense in the language of the statute alleged to be violated if the statute states all the constituent elements of the offense." *Kesterson*, 403 S.W.2d at 609. If, however, the statute uses generic terms in defining the offense, it is necessary to recite sufficiently the conduct constituting the offense in order to accomplish the purpose of the indictment or information. *Kesterson*, 403 S.W.2d at 611. A term is generally said to be generic when it does not proscribe specific conduct by which the offense is perpetrated. *State v. Ladner*, 613 S.W.2d 951 (Mo.App.1981).

In *Kesterson*, the challenged information charged only that "[defendant] did then and there unlawfully, feloniously, and intentionally steal, by means of deceit, certain property ..." 403 S.W.2d at 607. At the time, the term "deceit," used in the statute creating the offense "theft by deceit"[5] was not defined anywhere. An allegation of "deceit" alone therefore did not apprise the defendant of the means by which the theft was accomplished. Thus, "deceit" was a generic term, and independent specification of the conduct constituting the offense was required. *Kesterson*, 403 S.W.2d at 611.

■ In 1977, the Missouri General Assembly adopted a statutory definition of "deceit" at § 570.010(6), RSMo 1986 (effective January 1, 1979). Now, when a defendant is charged with "stealing by deceit" under § 570.030, application of the statutory definition immediately informs him that he is specifically charged with "purposely making a representation which is false and which the actor does not believe is true and upon which the victim

---

amended the information by interlineation. Appellant was tried on the resulting charge.

**4.** The indictments in causes 493426, 497928, and 511542 additionally failed to allege that the mileage on the vehicles was falsely stated.

**5.** § 560.165, currently § 570.030.1.

relies, as to a matter of fact, law, value, intention or other state of mind." § 570.-010(6). We find that when accompanied by specification of the alleged representation made by the defendant, the term "deceit" is not generic, but proscribes specific conduct by which the offense is perpetrated. A requirement that the indictment or information specifically allege all the elements of deceit when those elements are already specified by statute is redundant. By reference to § 570.010(6), a defendant charged with stealing by deceit under § 570.030 is sufficiently notified of the particulars of the offense to enable him to prepare an adequate defense and to plead former jeopardy in the case of an acquittal. Accordingly, we find that the information in this case was sufficient.[6]

### III.

Finally, appellant argues that the trial court erred in overruling his motion to suppress evidence obtained by a warrantless search and seizure.

In reviewing the trial court's ruling on the motion to suppress, our inquiry is limited to whether the court's decision is supported by substantial evidence. *State v. Johns*, 679 S.W.2d 253, 261 (Mo. banc 1984), cert. denied 470 U.S. 1034, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985).

■ The evidence adduced at the hearing on the motion to suppress showed the following: On August 19, 1983, appellant reported the theft of property from his rented storage lockers to the St. Louis County Police Department. On August 24, 1983, police officers recovered the property from a nearby storage locker not rented to appellant. A Mr. Moore, the man in whose name the locker was rented, provided police with a key and consented to the search; his son was present as police removed the contents of the locker.

The locker contained 119 miscellaneous items, including furniture, household goods, clothing and papers. Most of the items were boxed; some of the boxes were sealed, some were not. Detective Schunzel, one of the investigating officers, testified that because the boxes were not marked to indicate their content or ownership, there was no way of knowing at the time which property, or how much of the property in the locker belonged to appellant. Therefore, following standard department procedure, the police officers seized all the property in the locker and inventoried it prior to transporting the property to another location.

Three unmarked, unsealed boxes inspected during the inventory procedure were found to contain license plates, title applications, records of sales and other papers relating to automobile sales. Detective Schunzel testified that he was aware at the time of the inventory that appellant was under investigation for an alleged odometer rollback scheme. The three boxes were therefore taken to the police station and examined more thoroughly. Records recovered from the boxes were subsequently introduced into evidence at appellant's trial.

The Fourth Amendment and Mo. Const. art. I, § 15, prohibit only unreasonable searches and seizures. *State v. Collett*, 542 S.W.2d 783, 787 (Mo. banc 1976); *State v. Mills*, 671 S.W.2d 437, 440 (Mo.App. 1984). Whether a search and seizure is unreasonable within the meaning of the Fourth Amendment is not determined according to a rigid standard, but depends on the facts and circumstances of each case. *State v. Gibeson*, 614 S.W.2d 14, 15 (Mo. App.1981); *State v. Oberg*, 602 S.W.2d 948, 950 (Mo.App.1980). We find that if indeed the inventory procedure in this case may be

---

6. MACH–CR 24.02.2 (1979) provides that a "concise statement of the means employed and essential elements of 'deceit' ... as defined in § 570.010" must be included in an information charging stealing by deceit. In this regard, by failing to allege that appellant did not believe the odometer reading to be true, the informa- tion did not fully comply with MACH–CR 24.02.- 2. However, the use of pattern charges is not mandatory, but only recommended. Failure to follow a MACH–CR form does not alone render an information or indictment defective. *State v. Michell*, 611 S.W.2d 223, 225–26 (Mo. banc 1981).

characterized as a "search" at all,[7] the intrusion was constitutionally permissible.

Inventory searches conducted pursuant to standard police procedure have been upheld in other contexts for reasons including protection of the owners's property and protection of the police against claims of lost property. *South Dakota v. Opperman,* 428 U.S. 364, 369, 96 S.Ct. 3092, 3097, 49 L.Ed.2d 1000 (1976) (impounded automobile); *State v. Friend,* 711 S.W.2d 508, 510 (Mo. banc 1986) (listing of an arrestee's effects); *State v. Valentine,* 584 S.W.2d 92, 98 (Mo. banc 1979) (towed automobile); *State v. Ferguson,* 678 S.W.2d 873, 877 (Mo.App.1984) (impounded vehicle).

It is not unreasonable, and thus not a violation of the Fourth Amendment, for the police to protect themselves and the owners of the storage facility against false claims of theft. *Colorado v. Bertine,* —— U.S. ——, ——, 107 S.Ct. 738, 742, 93 L.Ed.2d 739 (1987). The same justifications exist where police locate property believed to be stolen. In this case, the police officers were lawfully on the premises by consent of Mr. Moore. While engaged in an unobjectionable identification and caretaking function, they discovered the incriminating records. The scope of their search cannot be found unreasonable by the fact that the unmarked boxes were opened for inventory of the contents. Without so doing, the police would have been remiss in their duty with regard to caretaking and location of the property appellant himself reported to be stolen.

Appellant's claim that the inventory search was a pretext for investigation is without merit. Detective Schunzel testified that the department routinely inventories recovered property and that inventory sheets were properly prepared. While Schunzel admitted that he was aware that

appellant was under investigation for a rollback scheme, the mere suspicion that contraband or other evidence will be found does not invalidate an otherwise valid inventory search conducted pursuant to proper police procedure. *Friend,* 711 S.W.2d at 511. We find no constitutional violation under the circumstances presented here, and hold that the evidence was properly admitted.

## IV.

This case involves consolidated appeals. The trial court entered a finding of guilt on one *count* in Cause No. 491084 and sentenced appellant to two years on that *count.* In Cause Nos. 493426, 497928, and 511542, the trial court sentenced appellant to two years on each of these *causes,* entering no judgment or sentence on any of the counts contained in the separate causes. The trial court approved a stipulation[8] which reads in pertinent part:

3. Based upon the evidence presented to this Court in Cause number 491084, the Court finds defendant guilty of the charge of stealing over $150 by deceit, a Class C felony, in Cause No. 493426, 497928, and 511542.

4. Defendant is sentenced to serve a term of imprisonment of two (2) years in the custody of the Department of Corrections & Human Resources for the offense of stealing over $150 by deceit, a Class C felony, in Cause No. 493426, is further sentenced to a term of two (2) years imprisonment in the custody of the Department of Corrections & Human Resources for the offense of stealing over $150 by deceit, a Class C felony, in Cause No. 497928, and is further sentenced to serve a term of imprisonment of two (2) years in the custody of the Department of Corrections & Human Resources for

---

7. *See South Dakota v. Opperman,* 428 U.S. 364, 370 n. 6, 96 S.Ct. 3092, 3097 n. 6, 49 L.Ed.2d 1000 (1976); *State v. Williams,* 654 S.W.2d 238, 241 (Mo.App.1983).

8. The parties appear to have intended that the trial court find appellant guilty on each count of

each cause, the sentences on the counts to run concurrently within each cause, and the sentences imposed under each cause to run consecutively, for a total of eight years. Obviously, the judgment entered by the trial court failed to achieve this result.

the offense of stealing over $150 by deceit, a Class C felony, in Cause No. 511542, said sentences to be served consecutive to the sentence imposed in Cause No. 491048 and consecutive for each sentence imposed herein.

A trial court must assess separate punishments for each offense charged. *State v. Bursby*, 395 S.W.2d 155, 161 (Mo. 1965); *Ex parte Morgan*, 280 S.W. 1038, 1039 (Mo.1926). Here, the trial court did not assess a sentence for each of the 28 counts contained in Cause Nos. 493426, 497928, and 511542. Nor from the record does it appear that trial court entered a judgment or sentence in Cause Nos. 493426, 497928, and 511542 as required by Rule 29.07. We must, therefore, dismiss these three causes on appeal, there being no final judgment from which appeal can be taken, and remand them to the trial court with directions to sentence the appellant on each count pursuant to the findings of guilt previously made. *State v. Chase*, 415 S.W.2d 731, 732 (Mo.1967); *State v. Taylor*, 324 S.W.2d 725, 727 (Mo.1959); *State v. Gonterman*, 588 S.W.2d 754, 755–56 (Mo.App.1979).

## V.

The judgment of the trial court in Cause No. 491084 is affirmed. The appeal in Cause Nos. 493426, 497928, and 511542 is dismissed and the causes remanded with directions.

All concur.