STATE of Missouri, Respondent,

v.

Robert NEVELS and Charles Graves, Appellants.

No. WD 43088.

Missouri Court of Appeals, Western District.

Jan. 15, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 5, 1991.

L.R. Magee, Kansas City, for appellants.

William L. Webster, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

Before BERREY, P.J., and FENNER and ULRICH, JJ.

BERREY, Presiding Judge.

The above cause was consolidated for jury trial before Judge Donald Barnes. The defendants below, appellants herein, were charged by second amended information with committing the class B felony of assault in the first degree, in that, "they attempted to kill or cause serious physical injury to Kurtis Cox[1] by striking Kurtis Cox with a beer bottle and by repeatedly striking Kurtis Cox with defendant Robert Nevels' and defendant Charles Graves' fists and feet."

The jury deliberated about an hour before returning a guilty verdict against each defendant. The jury "assess[ed] and declare[d] punishment for assault in the first degree at 6 (six) years" for each defendant and the court ordered the defendants confined in the custody of MDC.

In *State v. Wiley*, 522 S.W.2d 281, 292 (Mo.1975), the court held, "In reviewing the evidence we must view the evidence in the light most favorable to the state and give the state the benefit of all reasonable inferences."

---

**1.** Kurtis is spelled with a "K" in the information but with a "C" in the transcript. Here we use the spelling found in the information.

The facts are as simple as they are brutal and are set forth herein in some detail. In January, 1989, Caroline Riske was in her senior year at Missouri University, Columbia. When not in school she resided in Carrollton, Missouri. On January 20, 1989, she was enroute to her home in Carrollton. Traveling with her was her fiance, Keith Flick, from Stet, Missouri.[2] Her route of travel was from Columbia to Marshall Junction on I–70. She exited I–70 onto north bound U.S. Highway 65, which would take her to Carrollton. She continued on this route through Marshall toward Malta Bend, Waverly and Carrollton.

Caroline Riske stated that between Marshall and Malta Bend she came up behind a grey Ranchero traveling at about 45 miles per hour. She attempted to pass the Ranchero and it pulled into her passing lane and sped up. Riske then dropped back and slowed, staying behind the Ranchero for a few minutes.

She then stated:

Pretty soon out the passenger window came a series of beer cans out the passenger windows. I swerved to miss the first one, one proceeded to hit my hood and one proceeded to hit my windshield. At that point I decided to get around this car was trying real hard to drive swerving beer cans.

I started around the car. Again as I started around them they speeded up again. Just as I started to get around them. In the meantime there's an oncoming car. I was doing my best to get around them. I was getting real scared so I went around them, tried the best I could. Just as I almost hit the oncoming car they slowed down just enough to let me in. At that point I was—

. . . .

Q. (By Mr. Stouffer Continuing:) Miss Riske, after you got in front of the gray Ranchero, and the car went by, that is the oncoming vehicle, what happened then?

A. As I got in front of the car they pulled out from behind me and proceeded to drive right next to me, you know,

exactly even with my car. They threw—somebody in the passenger side leaned out, threw a beer can slammed it against my door.

At Malta Bend, Caroline stopped near the city limits and the Ranchero was "up the road" a short distance. A vehicle driven by Kurtis Cox pulled up beside her. He said, "I saw what happened [sic] you, you guys all right. Can I ... help you?" He then parked his car, exited it and walked toward the Ranchero. Caroline observed "that defendants both started shoving him and pushing him hard enough he was almost knocked off his feet ..." Appellants had him down and were hitting and kicking him. Keith tried to intercede but was restrained by Caroline. Caroline then drove to a nearby house to get help.

Caroline next saw Kurtis in Waverly. She described his condition: "[H]is face was bloody, and he was beat up and one eye was swollen shut. His shirt was torn to shreds. He was just in pretty bad shape."

The victim made a statement to deputy sheriff Jim Brown while being prepped for the doctor. He told Brown that he'd been hit over the head with a beer bottle. Kurtis Cox also testified that he'd been hit on the "top of the head" with a beer bottle.

The defendants that night were apprehended and given their Miranda Rights by Jim Brown, a Saline County deputy sheriff, who read them from a booklet Brown carried in his pocket. The defendants were both identified in court as being the perpetrators of this heinous crime.

Defendant Nevels first told Brown that the blood on his person was hog blood, from his job at Wilson food. He recanted this story and stated he'd had "a fight with a man at Malta Bend and that was the victim's blood."

Both defendants testified in their own behalf. Defendant Graves claimed Cox started the fight and that he and Nevels hit and kicked him while he was down. Graves testified that he weighed 235

**2.** Stet is located on the western edge of Carroll    County.

pounds on the night in question and that Nevels threw the beer cans.[3] The victim got up and was knocked down a second time by the defendants and again he was brutalized by being kicked and beaten. Nevels testified he kicked and struck the defendant. Nevels stated that he weighed 250 or 235 pounds.[4]

The defendants were characterized as "naughty boys" by their learned counsel, a characterization obviously not shared by the jury.

Appellant raises two points of error: (1) that the trial court erred in denying post trial motions because the information did not contain sufficient facts to constitute a lawful charge and that the amended information does not specifiy any serious physical injury that the victim sustained, if any; and (2) the trial court erred in instructing the jury because Instructions No. 7 and No. 9, the verdict directors, were incorrect in that MAI–CR3rd for instruction 304.04 notes that the instruction should be modified and these were not.

In Point I appellants claim that the trial court erred in its denial of their post trial motion for a new trial based on the claim that the information charging them did not set out sufficient facts to constitute a lawful charge. Rule 23.01(b)(2) mandates that the information must "state plainly, concisely, and definitively the essential facts constituting the offense charged."

The information reads as follows:

The Prosecuting Attorney of the County of Saline, State of Missouri, charges that the defendants Robert Nevels and Charles Graves, acting in concert, in violation of Section 565.050, RSMo, committed the class B felony of assault in the first degree, punishable upon conviction under Section 558.011(2), RSMo, in that on or about January 20, 1989, in the County of Saline, State of Missouri, the defendants Robert Nevels and Charles Graves, acting in concert, attempted to kill or cause serious physical injury to Kurtis Cox by striking Kurtis Cox with a beer bottle and by repeatedly striking Kurtis Cox with defendant Robert Nevels' and defendant Charles Graves' fists and feet.

Section 565.050, RSMo 1986, states that, "A person commits the crime of assault in the first degree if he *attempts to kill or knowingly causes physical injury to another person.*" (Emphasis added). A comparison of this information to § 565.050 shows that the language of the information tracks that of what is required by the statute. This met the test for sufficiency of an information which requires that all essential elements set out in the statute be contained in the information and whether the information apprises a defendant of the facts constituting the offense. *State v. O'Connell,* 726 S.W.2d 742, 746 (Mo. banc 1987). It is generally considered enough to charge the offense using the language of the statute alleged to be violated where the statute states the elements. *Id.*

It is also noteworthy that defendants did not file a motion for a bill of particulars in this case, the appropriate remedy in situations such as the instant one. "Failure to file a motion for a bill of particulars waives the right to later complain of lack of detail in the information, provided the alleged lack of detail does not render the information wholly insufficient." *State v. Fults,* 719 S.W.2d 46, 50 (Mo.App.1986). In the instant case the second amended information was not wholly insufficient. Furthermore, where no motion for a bill of particulars is made it is assumed that appellants were satisfied with the facts and particulars detailing the offense. *State v. Henderson,* 750 S.W.2d 507, 515 (Mo.App.1988). Appellants' failure to request a bill of particulars here acts as a waiver of any right they may have to raise the issue of a lack of specificity on appeal. *State v. Stark,* 728 S.W.2d 301 (Mo.App.1987). Appellants' Point I is denied.

---

3. The transcript initially disclosed his weight as 105. An obvious error.

4. Again the scrivener initially transcribed his weight at 130 pounds a figure considered and rejected by the court.

In Point II appellants allege that the trial court erred in giving instructions No. 7 and No. 9 as they weren't modified as required by MAI–CR3d 304.04. This issue has not been preserved for appeal. Rule 30.06(e) states, "If a point relates to the giving, refusal, or modification of an instruction such instruction shall be set forth in full in the argument portion of the brief." In the instant case, Instruction No. 7 is only set out partially and No. 9 is completely missing from the brief. Failure to follow Rule 30.06 fails to preserve the issue on appeal. *State v. Hall,* 761 S.W.2d 691, 693 (Mo.App.1988). Appellants' Point II is denied.

The convictions of both appellants, Robert Nevels and Charles Graves, are affirmed.

All concur.