**STATE of Missouri, Respondent,**

v.

**Naomi Ruth BARNES, Appellant.**

No. 79348.

Supreme Court of Missouri, En Banc.

March 25, 1997.

Rehearing Denied April 29, 1997.

Mary Elizabeth Ott, Clayton, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Timothy W. Anderson, Assistant Attorney General, Jefferson City, for Respondent.

LIMBAUGH, Judge.

Defendant Naomi Ruth Barnes appeals her convictions under § 287.128, RSMo 1994, for workers' compensation fraud. She initially appealed to the Court of Appeals, Eastern District, challenging, among other things, the constitutionality of § 287.128 on due process grounds. We have exclusive appellate juris-

diction of appeals challenging the validity of statutes. Mo. Const. art. V, § 3. Therefore, the court of appeals properly transferred the case to this Court. We affirm Barnes' convictions.

## I. FACTS

The State charged Barnes with five counts of committing workers' compensation fraud in violation of § 287.128, a class A misdemeanor. The five counts set out five different false material representations made over the telephone to Alma Froemel for the purpose of denying Froemel a benefit and/or obtaining a benefit for the Home Insurance Company on Froemel's workers' compensation claim. Following a jury trial, Barnes was found guilty on Counts I, III, IV, and V. Count I involved Barnes' September 20, 1993, statement that she was legally prohibited from providing Froemel with a copy of a medical report prepared by Dr. Terry Weis. Counts III and IV involved additional statements Barnes made concerning Froemel's need for legal representation, on September 28, 1993, and November 1, 1993, respectively. Count V involved Barnes' March 18, 1994, statement concerning the purpose and impact of Dr. Weis' medical report.

The following evidence, which we view in the light most favorable to the trial court's judgment, *State v. Shaw*, 847 S.W.2d 768, 771 (Mo. banc) *cert. denied*, 510 U.S. 895, 114 S.Ct. 260, 126 L.Ed.2d 212 (1993), was presented at trial:

Barnes worked as a claims adjuster for the Kansas City, Kansas, office of the Home Insurance Company, which was the workers' compensation carrier for the Salvation Army. On April 1, 1992, Alma Froemel, a Salvation Army employee in St. Louis County, injured her back during the performance of her job duties. After the Salvation Army filed an injury report with the Missouri Division of Workers' Compensation, Froemel then proceeded to negotiate a settlement on her workers' compensation claim with the Home Insurance Company. Barnes supervised this negotiation process. During the course of her contact with Barnes, Froemel recorded their telephone conversations because she had trouble remembering conversations.

Barnes first arranged for Froemel to receive an independent medical examination (IME) from Dr. Weis. On September 2, 1993, Dr. Weis provided his medical report to Barnes in which he diagnosed Froemel as having an acute lumbosacral sprain, along with aggravation to pre-existing degenerative arthritis in her lower back, as a result of the injury she received while working for the Salvation Army. Dr. Weis concluded that she was totally disabled and could not return to gainful employment. On September 20, 1993, Barnes discussed Dr. Weis' report with Froemel over the telephone, but told her that legally, she was not supposed to send Froemel a copy of the report.

In response to Barnes' request for a specific percentage disability rating, Dr. Weis reported that Froemel had a permanent disability of 100 percent of the whole person. After receiving this rating from Dr. Weis on September 28, 1993, Barnes filled out a workers' compensation field service estimate for $15,000.00 and wrote a letter to Home Insurance's attorney, stating that she was "badly in need of an IME with a reliable physician" and asking for suggestions to "get us out of this at a reasonable amount." Also on September 28, Barnes spoke with Froemel on the telephone. During that conversation, Froemel asked Barnes if she should get a lawyer. Barnes responded with the following comments: "Not as long as I'm working on your file. Because whatever you do ... what it amounts to, Alma, if you do, you're going to get the same thing I was going to give you only you're going to have to give the attorney ... twenty-five percent of it." Barnes also stated: that since the insurance company was "trying to take care of [her], then there's no reason to get [an attorney];" that she was trying to protect Alma's interest; and that she was "in there working in [Alma's] corner."

Barnes arranged for a second IME with Dr. Edward Schlafly on October 8, 1993. In his medical report, Dr. Schlafly concluded that Froemel suffered from a 15 percent disability of the person and 3 to 5 percent of that related to her Salvation Army injury. On November 1, 1993, Barnes contacted Froemel by telephone and offered to settle

the case at Dr. Schlafly's 15 percent disability rating for a total settlement amount of $8,000.00. During this conversation Barnes again counseled Froemel that she did not need an attorney and that she should ignore the "law judge" who had to approve the settlement if he suggested to her at the settlement conference that she should retain an attorney.

On December 15, 1993, Barnes drafted a note in her computer that stated "under the circumstances [the $8,000.00] is a very good settlement, thus, let us hope no counsel for claimant shows up." Dan Rosenberg, a legal advisor with the Division of Workers' Compensation, ultimately refused to accept the settlement agreement, after being made aware of Dr. Weis' medical evaluation and disability rating. Rosenberg also referred the matter to the fraud unit of the Division of Workers' Compensation. On March 18, 1994, Barnes told Froemel over the telephone that she, Barnes, was being turned over to the state's fraud unit, and also stated that Dr. Weis' report "was for [Alma's] social security and should have no bearing on your work comp claim."

## II. CONSTITUTIONALITY OF SECTION 287.128

■ Barnes contends that § 287.128.1(8) is unconstitutionally vague in violation of the due process clause of the Fourteenth Amendment to the United States Constitution and article I, § 10 of the Missouri Constitution. Section 287.128.1(8) provides that it is unlawful to:

> Knowingly make or cause to be made any false or fraudulent material statement or material representation for the purpose of obtaining or denying any benefit.

A criminal statute is vague if it fails to give notice to potential offenders of the prohibited conduct; that notice is inadequate when the terms of the statute are so unclear that people of common intelligence must guess at their meaning. *State v. Knapp*, 843 S.W.2d 345, 349 (Mo. banc 1992). Additionally, a statute is vague if it lacks explicit standards necessary to avoid arbitrary and discriminatory application by the state. *Id.*

■ To support her vagueness argument, Barnes contends that the terms "knowingly," "false," "statement," and "benefit" in § 287.128.1(8) are so unclear that people of common intelligence must guess at their meaning. In analyzing a vagueness challenge to a statute that defines a criminal offense, "due process requires no more than that the statute convey [a] sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *State v. Shaw*, 847 S.W.2d at 775. Further, a statute is not unconstitutional even when it "employs words that, though vague in the abstract, have come to have settled meanings within an area of law." *Id.*

■ In particular, Barnes argues that § 287.128 provides no guidance as to the scope of the term "benefit" as it is used in § 287.128.1(8). The term benefit, however, is a word of ordinary meaning. It is defined as a "payment" or "gift" or "a natural advantage." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 204 (1986). Given this common understanding, the statute at issue provides sufficient warning as to what it means to make a false or fraudulent material statement for the purpose of obtaining or denying a "benefit." Moreover, the term "benefit," in the context of the workers' compensation statutes, obviously means, at the least, the monetary benefits that are paid to injured workers, the specific kind of benefit that was the subject of the negotiations. Similarly, the term "statement" is susceptible of a common understanding. Barnes argues, though, that it is impossible to determine what constitutes "making a statement for the purpose of obtaining or denying a benefit." These are all terms of plain meaning, however, and they do not lose their meaning merely by being used together to define a proscribed activity. Barnes' real argument appears to be that the statute reaches too far, because any statement made by an adjuster could be construed as a statement made for the purpose of denying some benefit. This may be true, but § 287.128 only criminalizes particular kinds of statements, those that are false or fraudulent and material.

Barnes' assertion that the term "knowingly" is vague is especially far-fetched since she, herself, acknowledges and sets forth the definition for the mental state of knowingly found in § 562.016.3, RSMo 1994. She apparently believes that this definition does not apply to the offense proscribed in § 287.128.1(8). She is wrong. Section 562.016 provides definitions for the requisite mental state for any criminal offense, including the one at issue.

Finally, Barnes makes unsupportable assertions that the terms "false" and "fraudulent" are vague. The challenge to the term "false" is patently frivolous, and use of the term "fraudulent" has been decided time and again to be constitutional. *See, e.g., State v. Shaw*, 847 S.W.2d at 775.

■ Barnes next brings the vagueness challenge to § 287.128.3, which provides:

Any person violating any of the provisions of subsections 1 and 2 of this section shall be guilty of a class A misdemeanor and, in addition, shall be liable to the state of Missouri for a fine not to exceed ten thousand dollars or double the value of the fraud whichever is greater.

She argues that this penalty provision cannot be enforced by the State in a non-arbitrary manner, because it is not clear what is meant by "the value of the fraud." We hold that this section is sufficiently clear as it is readily apparent that the value of the fraud in this case is the value of the benefit that is obtained or denied.

■ On a different tack, Barnes argues that § 287.128 unconstitutionally delegates the legislative authority to define criminal conduct to the workers' compensation division. This argument is apparently a challenge to § 287.128.6, which provides in part:

Any person may file a complaint alleging fraud or noncompliance with this chapter with a legal advisor in the division of workers' compensation. The legal advisor shall refer the complaint to the fraud and noncompliance unit within the division. The unit shall investigate all complaints and present any finding of fraud or noncompliance to the director, who may refer the file to the attorney general.

Barnes fears that the investigative power of the fraud unit will lead to arbitrary and capricious investigations and enforcement policies. These fears are needless. With regard to § 287.128.1(8), we determined that it was not vague and that it provided sufficient warning of the proscribed conduct. As such, the workers' compensation division is sufficiently apprised of what conduct is unlawful, and the public is protected against arbitrary investigations and enforcement policies.

■ As a last resort, Barnes contends that § 287.128 only reaches conduct that occurs in a proceeding before the Labor and Industrial Relations Commission or the Division of Workers' Compensation. She defines proceedings as either the process of obtaining approval of a workers' compensation settlement or a hearing on a workers' compensation claim. We are at a loss, however, to understand how the operation of § 287.128.1(8) is limited to these particular proceedings when the statute, itself, contains no words of limitation.

## III. SUFFICIENCY OF INFORMATION

■ Independent of the constitutional challenges, Barnes argues the trial court erred in not dismissing the amended information filed against her because it was insufficient to apprise her of the alleged criminal conduct. The purpose of an indictment or information is to inform the accused of the charges against her so that she may prepare an adequate defense and to prevent retrial on the same charges in case of an acquittal. *State v. O'Connell*, 726 S.W.2d 742, 746 (Mo. banc 1987). The test for the sufficiency of an indictment or information is whether it contains all of the elements of the offense and clearly apprises the defendant of the facts constituting the offense. *See id.; State v. Heslop*, 842 S.W.2d 72, 76 (Mo. banc 1992), *cert. denied*, 508 U.S. 921, 113 S.Ct. 2369, 124 L.Ed.2d 275 (1993).

The information in this case charged the offense in the language of the statute and contained all the elements set out in the statute. In addition, each Count stated with specificity the date the alleged fraudulent representation occurred and the content of

such representation. This was sufficient to apprise Barnes of the facts constituting the crime charged and to allow her to prepare an adequate defense. The trial court committed no error by refusing to dismiss the information.

## IV. JURISDICTION AND VENUE

Barnes' next point is that the trial court lacked jurisdiction over the workers' compensation offense, because none of the elements of the crime occurred in the State of Missouri. Section 541.191, RSMo 1994, provides that Missouri has jurisdiction over an offense "if conduct constituting any element of the offense or a result of such conduct occurs within Missouri." The elements of workers' compensation fraud are: (1) knowingly, (2) making or causing to be made, (3) any false or fraudulent, (4) material statement or material representation, (5) for the purpose of obtaining or denying any benefit. § 287.128.1(8). Without determining whether any element of the offense occurred in Missouri, it is clear that Missouri nonetheless has jurisdiction over the offense, because the result of Barnes' conduct—that Alma Froemel was willing to accept an inadequate settlement amount on her workers' compensation claim that was pending before the Missouri Division of Workers' Compensation—occurred within Missouri. Thus, the trial court had subject matter jurisdiction of this action.

Barnes also argues that venue was improper in any county in the state of Missouri. She first raised this issue in her motion for new trial, and therefore, her objection was untimely. *See* Rule 24.04(b). By proceeding to trial without objection, Barnes waived the issue of venue. *See State v. Wood,* 596 S.W.2d 394, 401 (Mo. banc) *cert. denied,* 449 U.S. 876, 101 S.Ct. 221, 66 L.Ed.2d 98 (1980); *State v. Mack,* 903 S.W.2d 623, 627 (Mo.App.1995). This point is denied.

## V. JURY INSTRUCTIONS

For her next point, Barnes submits that the trial court erred in overruling her objections to the verdict director instructions 5, 7, 9, 11, and 13. Specifically, Barnes con-

tends that the instructions were improper, because the definition of the term "material," as used in the instructions, (1) did not comply with the MAI–CR 3d definition, and (2) included an element of reliance. In pertinent part, the verdict directors stated:

> A representation is "material" if it might reasonably influence or has a natural tendency to influence the person to whom the representation was made to take a particular action or decline to take a particular action with regard to a workers' compensation claim. The person to whom the representation is made need not be influenced by or rely upon the representation in order for the representation to be material.

Both parties agree that there was not an applicable MAI–CR 3d instruction for the criminal offense contained in § 287.128.1(8). The instructions that were approved by the court in this case were modeled on MAI–CR 3d 304.02, which is the generic verdict director form.

Barnes does not argue that it was error to provide a definition of the term "material," but rather that it was error to not use the definition found in MAI–CR 3d 333.00, the definitions section. The only definition found in MAI–CR 3d 333.00 for the term "material," however, actually defines the term "material fact" as it is used as an element of the offense of perjury under § 575.040.1, RSMo 1994. That definition cites § 575.040.2, RSMo 1994, which provides that a fact is material "if it could substantially affect, or did substantially affect, the course or outcome of the cause, matter, or proceeding." Although this definition may not be inappropriate to define "material" as it is used in § 287.128.1(8), it is tailored for a different offense. In our view, the State offered a suitable definition for "material" that was relevant to workers' compensation fraud and not inconsistent with the definition in MAI–CR 3d 333.00. Accordingly, the trial court did not err in accepting the State's definition of "material" in the verdict directors.

Barnes also argues that it was error to accept the State's definition of "material," because it added an element of reliance to the offense charged. Both parties agree that

§ 287.128.1(8) does not require reliance. Despite Barnes' contention, the definition states only that a representation is material "if it might reasonably influence or has a natural tendency to influence." This in no way suggests that the representation must be relied upon by the listener to be material. Indeed, the definition goes on to state that "[t]he person to whom the representation is made need not ... rely upon the representation in order for the representation to be material." Barnes' argument is without merit, and the trial court committed no error in accepting the State's verdict directors.

## VI. SUFFICIENCY OF THE EVIDENCE

Finally, Barnes contends that the trial court erred in overruling her motions for judgment of acquittal because the evidence presented at trial was insufficient to establish she violated § 287.128.1(8). In reviewing a challenge to the sufficiency of the evidence, appellate courts are limited to determining whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989). On review, this Court accepts as true all evidence favorable to the State, including all favorable inferences drawn from the evidence, and disregards all evidence and inferences to the contrary. *Id.*

The State presented evidence on Count I that Barnes told Froemel that she could not legally send her a copy of Dr. Weis' medical report and evidence on Count V that she told Froemel the report was good for her social security claim but not her workers' compensation claim. Barnes asserts that the State failed to present any evidence that her statements to Froemel concerning Dr. Weis' report were either false or material. On the contrary, to establish the falsity of the Count I representation the State presented testimony from both a private attorney and a legal advisor for the Division of Workers' Compensation that it is not illegal for a claims adjuster with an insurance company to provide a doctor's medical report or rating to a claimant such as Alma Froemel. On Count V, the

State presented the testimony of legal advisor Dan Rosenberg that Dr. Weis' report and disability rating were critical to a determination of Froemel's workers' compensation case. This evidence was clearly sufficient for a juror to find beyond a reasonable doubt that the representations in Counts I and V were false.

In addition, the evidence was sufficient for a juror to find that the false representations were material. A false representation is considered material if it "has a natural tendency to influence, or was capable of influencing" the decision of the person to whom it was directed. *See Kungys v. United States,* 485 U.S. 759, 770, 108 S.Ct. 1537, 1546, 99 L.Ed.2d 839 (1988). The evidence showed that Barnes consistently led Froemel to believe that Barnes was looking out for Froemel's best interests and attempting to get her as much money as possible on her claim. Barnes even led Froemel to believe that she was an attorney. By fostering Froemel's trust, Barnes was able to create a situation in which her representations would influence Froemel's decision-making process.

As to Counts III and IV, Barnes submits that the State failed to present any evidence that her statements to Froemel concerning Froemel's need for an attorney were false. Although it is true that there was no evidence that it is necessary to have an attorney handle a workers' compensation claim, the evidence set forth in Section I, above, established that Barnes went to great lengths to convince Froemel that Barnes and Home Insurance were working in her corner and to discourage her from involving an attorney. At the same time, Barnes' work records made it abundantly clear that she did not want Froemel to retain an attorney, because she feared an increase in the amount of the settlement. Indeed, had Froemel retained an attorney, Dr. Weis' report almost certainly would have been used to negotiate an increased settlement amount. Thus, there was sufficient evidence for a juror to conclude beyond a reasonable doubt that Barnes' representations concerning Froemel's need for an attorney were false.

Finally, Barnes argues that the State failed to present any evidence that she made

any of the alleged representations for the purpose of denying Froemel a benefit. The evidence disputes this argument. Barnes' work records show that she was attempting to limit the settlement amount to $8,000.00, even though she was well aware that Froemel could likely settle the claim for a much higher amount in view of Dr. Weis' disability rating. There was sufficient evidence for the jury to find that Barnes made the representations in Counts I, III, IV, and V for the purpose of denying Froemel a benefit. This point is denied.

### VII. CONCLUSION

For the foregoing reasons, the judgment is affirmed.

All concur.