STATE of Missouri, Respondent,

v.

James G. CHOATE, Appellant.

No. WD 54407.

Missouri Court of Appeals,
Western District.

Submitted May 20, 1998.

Decided Aug. 25, 1998.

Shawn E. DeGraff, Shawnee, Kan., Steven J. Braun, Kansas City, MO, for appellant.

Raymond J. Sonnenberg, Asst. Pros. Atty., Harrisonville, for respondent.

Before ULRICH, C.J., P.J., and BRECKENRIDGE and SMART, JJ.

SMART, Judge.

James G. Choate was convicted of misdemeanor animal neglect, § 578.009, RSMo 1994 [1]. He appeals, contending that the trial court did not have jurisdiction because the State's Information did not state an offense under which he could be legally charged and failed to adequately describe the animal involved. He claims that the State's prosecution was contrary to the legislative history and intent of § 578.009. Mr. Choate is also challenging the sufficiency of the evidence and the trial court's failure to suppress certain evidence. The judgment is reversed.

### FACTS

On February 17, 1996, five-year-old Ryan Clary was attacked and seriously injured by a dog. His injury was severe, with muscle torn completely away from the bone. Ryan

---

1. All sectional references are to Missouri Revised Statutes 1994, unless otherwise indicated.

said that he had been bitten by a dog and he identified the animal as a brown German Shepherd. Corporal Mike Clark, a Belton police officer investigating the matter, was told by a neighbor that there were only two German Shepherds in the neighborhood. The neighbor pointed to Mr. Choate's yard. Corporal Clark found blood spots as he went through an alley. He followed the trail of blood to Mr. Choate's residence. The trail lead to a fence surrounding Mr. Choate's yard. There was a gap in the fence, where a fence plank was missing. Corporal Clark looked through the gap in the fence and observed two German Shepherd dogs. The dogs came toward him "in a vicious, aggressive manner." The dog identified as the one that bit Ryan stuck its snout through the gap, growling and showing its teeth. The gap appeared as if it had been chewed on and there were blood spots on the fence surrounding the hole. Officer Clark saw blood on the paw of one of the dogs. Corporal Shawn Hornbeck, another Belton police officer, testified that he followed a trail of blood from the victim to the fence. He also observed blood on the dog.

Officer Clark summoned Terry Boring, the animal control officer. Officer Boring believed the animal to be a wolf-hybrid. Mr. Choate also believed the dog was a wolf-hybrid. As it was illegal to possess a wolf-hybrid, Officer Boring wanted to take the animal into custody. Mr. Choate assisted Officer Boring in removing the dog from the yard. At trial, Dr. Raymond Perotti, a professor at the University of Kansas specializing in hybridization in birds and mammals, testified that in his opinion the animal was not a hybrid.

Mr. Choate's property was adjacent to an alley sometimes traveled by children going to a nearby park. There was evidence that neighborhood children teased the dogs. Ryan had a plastic knife in his possession at the time he was bit. Several neighbors testified. Jennifer Miller testified that the gap in the fence surrounding Mr. Choate's backyard had been there for a long time. Ms. Miller testified that Mr. Choate kept two dogs in his yard. One of the dogs was black, one was black and tan. The black and tan dog, iden-

tified as the dog that bit Ryan Clary, she described as "mean." The dog would poke its nose through the gap in the fence and would "bark and growl and just go crazy." Jeremy Clark testified that the backyard fence had a gap in it and that it looked as if it had been chewed by the dogs. He stated that the dog would snap and growl and, at times, would have its mouth out of the fence. Another neighbor, Juanita Rovie, related that several times she had stuck her arm through the gap in the fence in order to pet one of the dogs, and the dog had snapped at her. She had told Mr. Choate that his dogs were mean. He replied, "Yeah, I know."

The matter went to trial on April 2, 1997. The trial court found Mr. Choate guilty of misdemeanor animal neglect in violation of § 578.009, RSMo 1994. The trial court fined Mr. Choate $300.00, but waived the fine. The court ordered Mr. Choate to pay $500.00 toward the reasonable care of his dog while it is in the custody of the Department of Conservation in addition to the $150.00 Mr. Choate had already paid to the City Veterinarian. Mr. Choate was sentenced to one day in the Cass County Jail. Imposition of the sentence was suspended and Mr. Choate was placed on unsupervised probation for two years. As a condition of probation, Mr. Choate was to pay the $500.00 and not return the dog to Cass County during the period of probation. Mr. Choate appeals.

## JURISDICTION

Mr. Choate contends that the trial court erred in failing to sustain his motions to dismiss because the court did not have jurisdiction over the matter. Mr. Choate contends that the State's Information/Complaint did not state an offense under which he could be legally charged. He claims that the Information/Complaint failed to adequately specify the animal involved and that the State's prosecution was contrary to the legislative history and intent of § 578.009.

Section 578.009.1 states:

1. A person is guilty of animal neglect when he has custody or ownership or both of an animal and fails to provide adequate care or adequate control, including, but not limited to, knowingly abandoning an ani-

mal in any place without making provisions for its adequate care which results in substantial harm to the animal.

The term "adequate control" is defined in § 578.005(2) as "to reasonably restrain or govern an animal so that the animal does not injure itself, any person, any other animal, or property."

The State filed an Information against Mr. Choate on March 27, 1996. Mr. Choate filed a motion for a bill of particulars. The State amended its Information and Complaint. Again, Mr. Choate filed a motion for a bill of particulars. The State amended its Information and Complaint once again. Its Second Amended Information, filed October 25, 1995 charged:

> JAMES G. CHOATE, in violation of Section 578.009, RSMo, committed the class C misdemeanor of animal neglect, punishable upon conviction under Sections 558.011.1 and 560.016.1, and 578.009.2, RSMo, in that on or about February 17, 1996, in the City of Belton, County of Cass, State of Missouri, the defendant, having ownership and custody of an animal, to wit, a canine or canine-wolf hybrid, failed to provide adequate control over the animal by holding it within a fenced area with an unsecured opening of sufficient size to allow the animal to injure a child, Ryan Clary, and further of sufficient size to potentially allow the animal to be injured by other human beings or animals.

In *State v. Barnes*, 942 S.W.2d 362, 367 (Mo. banc 1997), the purpose of an indictment or information is presented as two-fold. It must (1) inform a defendant of the charges against him so that he may prepare an adequate defense and (2) prevent retrial upon the same charges should there be an acquittal. *Id.* An information is deemed to be sufficient where it contains all of the elements of the offense and notifies the defendant of the facts that constitute the offense. *Id.* The State's Information in the instant case charges Mr. Choate with the failure to provide "adequate control" over the animal by "holding it within a fenced area with an unsecured opening of sufficient size to allow the animal to injure a child, Ryan Clary, and further of sufficient size to potentially allow

the animal to be injured by other human beings or animals." Although the charge never explicitly says that either an animal or a human was injured, it implies that Ryan Clary was injured. Under *Barnes*, we conclude that the information was sufficient to apprise Mr. Choate of the charge against him and the facts supporting the charge. *See also State v. Parkhurst*, 845 S.W.2d 31 (Mo. banc 1992).

Mr. Choate also contends that one of the essential elements was lacking because animal neglect is limited to situations where (1) the defendant had a specific animal in his custody; (2) the defendant knowingly failed to provide adequate care or adequate control of the animal; and (3) the defendant's failure resulted in substantial harm to the animal. He contends that here there was no allegation or proof that the animal was injured in any way. In support of his contention, he relies upon the approved charge for animal neglect, MACH–CR 32.60, MAI–CR 3d 332.60, and *Vandeven v. Seabaugh*, 753 S.W.2d 46, 48 (Mo.App.1988).

The issue is whether there must be substantial harm to the animal for its owner or custodian to be charged with the offense of animal neglect. This court is obligated "to read statutes in their plain, ordinary, and usual sense." *Bosworth v. Sewell*, 918 S.W.2d 773, 777 (Mo. banc 1996). If there is no ambiguity in the statute, we do not look at any other rule regarding construction. *Id.* Where the statutory language is clear, we view the law as meaning what it says. *State ex rel. Bunker Resource, Recycling & Reclamation, Inc. v. Dierker*, 955 S.W.2d 931, 933 (Mo. banc 1997). "Courts are without authority to read into a statute a legislative intent contrary to the intent made evident by the plain language." *M.A.B. v. Nicely*, 909 S.W.2d 669, 672 (Mo. banc 1995). The statute under scrutiny here makes it a crime to fail "to provide adequate care or adequate control" of an animal. "Adequate control" is defined in § 578.005(2) as "to reasonably restrain or govern an animal so that the animal does not injure itself, any person, any other animal, or property."

Mr. Choate cites *Vandeven v. Seabaugh*, 753 S.W.2d 46, 48 (Mo.App.1988), as support for his argument that the statute requires injury to an animal before a charge may be brought. In *Vandeven*, a bicyclist brought a civil action against the owner of a dog that attacked and bit her leg. Count II of the bicyclist's petition was based upon a violation of § 578.009. *Id.* at 47. The trial court granted the defendant's motion to dismiss on the theory that the statute was not designed for the protection of people, and the bicyclist appealed, arguing that the statute creates an implied civil action by including, as a form of animal neglect, the failure to provide adequate control. The Court of Appeals upheld the dismissal. It found that the injury to the plaintiff was not the type of harm that the statute was designed to prevent. *Id.* at 48. The court found that § 578.009 was part of a statutory scheme, the clear objective of which was the protection of animals rather than the protection of the public generally. The court noted that the legislative history shows that RSMo §§ 578.005–050 (1986) was enacted "for the purpose of providing adequate care, food and shelter for animals...." 1983 Mo. Laws 934. The act repealed RSMo §§ 578.055 and 578.060 (1978), which provided penalties for (1) malicious killing, wounding or torturing of animals and for (2) impounding without food and water, overwork and cruel treatment of animals. *Id.* Such sections were repealed in order to enact new sections "relating to the same subject." *Id.* The court in *Vandeven* distinguished other cases involving municipal ordinances requiring that animals be restrained for the policy of protecting the public. *Id.* The court's view of § 578.009 was that, in contrast to such municipal ordinances, this statute was designed for the protection of animals. *Id.* Accordingly, the court held that the statute was not designed to provide protection to people. *Id.*

■ We do not agree with Mr. Choate that *Vandeven* means that he cannot be prosecuted under § 578.009. While the main purpose of § 578.009 may be the protection of animals, the clear language of the statutory definition of "adequate control" makes it very clear that an animal owner can be prosecuted when an animal which is not restrained causes injury to a human. *Vandeven* was a case in which the plaintiff attempted to make a civil cause of action out of this criminal statute. Courts do not presume that a criminal statute creates a civil cause of action. Therefore, if the court in *Vandeven* did not find a civil cause of action, all it determined was that there was insufficient reason to believe that the legislature intended to create civil liability in this particular statute.

In *State v. Marshall*, 821 S.W.2d 550 (Mo. App.1991), the same court that decided *Vandeven* three years earlier had no difficulty applying this statute in a criminal prosecution of an owner of two loose pit bulls who attacked a woman in her back yard. Moreover, if we were to accept Mr. Choate's argument, we would be left with the interesting result that if Mr. Choate had left his animal at large with the result that the dog had been attacked and injured by a group of children wielding sticks, he could be prosecuted; whereas if his unrestrained animal had attacked a child in the park, but the dog had not been hurt, he could not be prosecuted. Consequently, we conclude that the clear language of the statutes governs, and that Choate may be prosecuted under the statute.

### The Evidence Does Not Support the Conviction Because There Was No Evidence That The Dog Could Have Injured the Child Absent the Child Inserting His Arm Into the Enclosure

The next issue is whether there was sufficient evidence to support a conviction. The testimony and the photographs in the record reveal that the "hole in the fence" was simply a missing slat in the fence of not more than three inches. The dog could by no means get any more than his snout through the gap. The gap in the fence was apparently enough to attract the victim to take a plastic knife and attempt to challenge the dog in some fashion. As far as can be discerned from the evidence, the young child chose to stick his arm into the enclosed area where the arm was vulnerable to the dog's attack.

Mr. Choate was charged with failing to reasonably restrain the animal because the opening in the fence was of "sufficient size to allow the animal to injure a child." There was no evidence, however, that the dog could have inflicted this injury on the child without the child inserting his arm into the enclosed area. The opening in the fence was not shown to be of sufficient size to allow the animal to injure any child absent the child intentionally exposing himself to the danger. Consequently, we agree with Choate that the state failed to make a submissible case.

We note that the animal is dangerous and that the owner may have had actual knowledge of the dog's vicious propensities. Whether or not the owner may incur civil liability, however, we fail to see how it can be said that any owner of an animal can be criminally responsible under *this statute* for failure to perfectly seal off the public from voluntary actions of exposure to the animal. To so interpret the statute would mean that owners of animals must be subject to criminal prosecution for injuries to trespassers who voluntarily accept the risk of entering an area occupied by the animal for the purpose of provoking the animal. We do not believe the concept of "reasonably restraining" an animal can be applied so broadly. We conclude that the trial court erred in failing to grant a judgment of acquittal. The conviction is reversed.

ULRICH, C.J., P.J., and
BRECKENRIDGE, J., concur.