STATE of Missouri, Respondent,

v.

Teresa A. KNAPP, Appellant.

No. 74579.

Supreme Court of Missouri,
En Banc.

Dec. 18, 1992.

346

Kenneth M. Dake, Barbara L. Teeple, Sedalia, for appellant.

William L. Webster, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

LIMBAUGH, Judge.

Defendant Knapp appeals a judgment of conviction of involuntary manslaughter for the killing of the unborn child of Hermella Teresa Ambrose. We granted transfer to determine whether causing the death of this unborn child is causing the death of a "person" within the meaning of the involuntary manslaughter statute, *§ 565.024, RSMo 1986*. The judgment is affirmed.

According to the State's evidence at trial, the unborn child died of injuries sustained in a traffic accident. Defendant, who was intoxicated, drove her vehicle across the center line of Highway 50 in Pettis County[1] and collided with a vehicle driven by Mrs. Ambrose, who was six months pregnant. Medical testimony revealed that the unborn child was viable and that death resulted from a brain hemorrhage brought on by trauma to the child's head, a result "consistent with seat belt injuries."

In addition to the conviction for involuntary manslaughter, defendant was convicted of two counts of second degree assault due to injuries to Mrs. Ambrose and another passenger in the Ambrose vehicle. On appeal, defendant does not contest the convictions for assault or the sufficiency of the evidence on the manslaughter count.

Her sole allegation of error is that the trial court erred in overruling her motion to dismiss the manslaughter count. In her motion, defendant contends that there can be no criminal liability for causing the death of an unborn child under the involuntary manslaughter statute, *§ 565.024, RSMo 1986*. The part of that statute relevant to this case states:

1. A person commits the crime of involuntary manslaughter if he:

\* \* \* \* \* \*

(2) While in an intoxicated condition operates a motor vehicle in this state and, when so operating, acts with criminal negligence to cause the death of *any person*. (emphasis added)

*Section 565.024, RSMo 1986.*

The definition for the term "person" is supplied, according to the State, by reference to *§ 1.205, RSMo 1986*, which provides:

1. The general assembly of this state finds that:

(1) The life of each human being begins at conception;

(2) Unborn children have protectable interests in life, health, and well-being;

(3) The natural parents of unborn children have protectable interests in the life, health, and well-being of their unborn child.

2. Effective January 1, 1988, the laws of this state shall be interpreted and construed to acknowledge on behalf of the unborn child at every stage of development, all the rights, privileges, and immunities available to other persons, citizens, and residents of this state, sub-

---

1. The case was heard in Morgan County on a change of venue from Pettis County.

ject only to the Constitution of the United States, and decisional interpretations thereof by the United States Supreme Court and specific provisions to the contrary in the statutes and constitution of this state.

3. As used in this section, the term **"unborn children"** or **"unborn child"** shall include all unborn child or children or the offspring of human beings from the moment of conception until birth at every stage of biological development.

4. Nothing in this section shall be interpreted as creating a cause of action against a woman for indirectly harming her unborn child by failing to properly care for herself or by failing to follow any particular program of prenatal care.

That unborn children have "protectable interests in life, health, and well-being," and enjoy "... all the rights ... of *other persons* ..." (emphasis added) necessarily implies that unborn children are persons, at least for purposes of *§ 1.205*. Defendant does not disagree, but argues, instead, that

1) the language of *§ 1.205* cannot be construed to apply to *§ 565.024*, and

2) to the extent that *§ 1.205* does purport to apply to *§ 565.024* and other statutes, it is unconstitutionally vague; and

3) *§ 1.205*, as it purports to amend *§ 565.024*, violates *art. III, § 28* of the Missouri Constitution because *§ 565.024* was not "set forth in full as amended" in the legislative act that included *§ 1.205*.

## STATUTORY CONSTRUCTION OF § 1.205

The primary rule of statutory construction is to "ascertain the intent of the lawmakers from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning." *State v. Kraus*, 530 S.W.2d 684, 685 (Mo. banc 1975); *State v. Yount*, 813 S.W.2d 85 (Mo. App.1991). In determining legislative intent, the reviewing court should take into

consideration statutes involving similar or related subject matter when those statutes shed light on the meaning of the statute being construed, *State v. White*, 622 S.W.2d 939, 944 (Mo. banc 1981), *cert. denied*, 456 U.S. 963, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1981). This principle that statutes should be construed harmoniously when they relate to the same subject matter is all the more compelling when the statutes are passed in the same legislative session. *State v. Holmes*, 654 S.W.2d 133, 135 (Mo.App.1983). Moreover, "[w]hen the same or similar words are used in different places within the same legislative act and relate to the same or similar subject matter, then the statutes are *in pari materia* and should be construed to achieve a harmonious interpretation of the statutes." *Citizens Bank and Trust Co. v. Director of Revenue*, 639 S.W.2d 833, 835 (Mo. banc 1982). Finally, we recognize that ambiguities in statutes in criminal cases must be construed against the State, but this rule of strict construction does not require that the court ignore either common sense or evident statutory purpose. *State v. Hobokin*, 768 S.W.2d 76, 77 (Mo. banc 1989). With these rules in mind, we address the language of the statutes in question.

Reading all subsections of *§ 1.205* together and considering especially the express language of *Subsection 2* that "... the laws of this state shall be interpreted and construed ...," it is clear that *§ 1.205* is intended to apply to at least some other statutes. It is also clear that the legislature intended for *§ 1.205* to apply to *§ 565.024*, in particular, because both statutes were passed in the same legislative session, on the same day, and as part of the same act, H.B. 1596.[2] Furthermore, these two statutes, both of which refer to the term "persons," are related—one defines the term "persons" for the other. Therefore, they must be read *in pari materia*. Without deciding whether *§ 1.205* applies to other statutes, we conclude that it ap-

---

**2.** House Bill 1596 contains three categories of statutes: *§ 1.205*, pertaining to the rights of unborn children and the finding that life begins at conception; *§ 188.010, et seq.*, pertaining to abortion regulation; and *§ 565.024*, pertaining to the criminal charge of involuntary manslaughter.

plies at least to the involuntary manslaughter statute.

Defendant argues that the legislature's failure to specify in the text of § 565.024 that unborn children are persons shows a legislative intent that unborn children, in this context, are not persons. This conclusion is supported, defendant adds, because H.B. 1596 repealed the former version of § 565.024, which did indeed refer to unborn children. The only change from the former version to the current version was the deletion of *subparagraph 3*, which read, "[c]auses the death of unborn quick child by any injury to the mother of such child which would be murder if it resulted in the death of such mother." Under defendant's view, the legislature has eliminated any criminal liability for the death of an unborn child, whether quickened or not.

Under our analysis, however, there is no need to insert in the text of the manslaughter statute that unborn children are persons, because that information is supplied by § 1.205. Moreover, the elimination of the requirement of *subparagraph 3*—that criminal liability is imposed only if the unborn child is a quick child—prevents § 565.024 from conflicting with § 1.205 and allows the two statutes to be harmonious and consistent. In other words, elimination of *subsection 3* of § 565.024 allows § 1.205 to control the issue.

Defendant also contends that § 1.205 is really an abortion statute, having no connection or relevance to the involuntary manslaughter statute, nor, for that matter, to any statute other than those pertaining to abortions. Legislative intent to that effect, she maintains, is evidenced by the "title" to the statute, which states without mention of the crime of involuntary manslaughter, that, "Life begins at conception—unborn child defined—failure to provide prenatal care, no cause of action for." She explains that if the legislature had

intended for § 1.205 to apply to other statutes, it would have so stated in the "title." Furthermore, if the legislature did intend for § 1.205 to apply to other statutes, the failure to set out that information in the "title" violates *art. III, § 23* of the Missouri Constitution, which provides in pertinent part that the subject of a bill must be "clearly expressed in its title."

Defendant's points are untenable. She cites no authority, and we have found none, for the proposition that legislative intent for one statute to apply to others must be determined from the statute's "title." In any event, no legislative intent can be gleaned from the "title" to § 1.205 because that section has no title. What defendant refers to as the "title" of § 1.205 is actually the headnote to § 1.205, inserted by the revisor of statutes. § 3.050, RSMo.[3] House Bill 1596, which includes § 1.205 and § 565.024, does have a legislatively enacted title, which states: "An act to repeal sections 108.010 ... and 565.024 ... relating to unborn children and abortion, and to enact in lieu thereof twenty new sections relating to the same subject...." [4]

*Article III, § 23* deals in part with the titles to legislative bills, such as H.B. 1596; it has no application to individual statutes. *Lincoln Credit v. Peach*, 636 S.W.2d 31 (Mo. banc 1982), outlines the ramifications of *art. III, § 23* as follows:

> The purpose of Art. III, § 23, is to ensure that the title of a bill generally indicates what the act contains so that neither the legislature nor the public is misled.... The title to an act will be valid if it indicates the general contents of the act and if the contents fairly relate to and have a natural connection with the subject expressed in the title. Mere generality of title will not prevent the act from being valid, where the title does not tend to cover up or obscure legislation

---

**3.** The headnote is merely an arbitrary designation inserted for convenience of reference and has no legislative authority to lessen or expand the letter or meaning of law. *State v. Maurer*, 255 Mo. 152, 164 S.W. 551, 552 (1914).

**4.** The full text of the title states:

AN ACT to repeal sections 188.010, 188.040, 188.045, and 188.080, RSMo 1978, and sections 188.015, 188.025, 188.028, 188.039, 188.063 and 565.024, RSMo Supp.1984, relating to unborn children and abortion, and to enact in lieu thereof twenty new sections relating to the same subject, with penalty provisions.

which is in itself incongruous and has no necessary or proper connection with the rest of the act.

*Id.* at 39 (citations omitted).

■ In this case, it is "clearly expressed" in the title of the bill that *§ 565.-024* is part of the subject of the bill. Moreover, it is "clearly expressed" in the title that a part of the subject matter includes the general topic of unborn children. Under the statutory scheme of H.B. 1596, the involuntary manslaughter statute is directly related to and has a natural connection with the subject of unborn children. As we have indicated earlier, *§ 1.205*, which deals exclusively with unborn children, serves to define the term "person" in *§ 565.024* to include unborn children.

Defendant also argues that our holding in this case conflicts with *Rambo v. Lawson*, 799 S.W.2d 62 (Mo. banc 1990), a wrongful death case. Like the involuntary manslaughter statute, the wrongful death statute does not define the term "person." In *Rambo*, a plurality of this Court ruled that the term "person" does not include a nonviable fetus, and therefore, a civil cause of action for the wrongful death of a nonviable fetus will not lie. *Rambo* is distinguishable in two important respects. First, the death of the Ambrose fetus occurred after the enactment of *§ 1.205*, whereas the wrongful death in *Rambo* occurred before the enactment. Second, unlike the involuntary manslaughter statute, the wrongful death statute was not republished as part of the act that included *§ 1.205*.

## VAGUENESS CHALLENGE

■ Defendant claims that "[a]pplying *Section 1.205, RSMo 1986* to criminal (and all other) laws of this state creates a dragnet clause and makes the statute unconstitutionally vague and violates due process...." In support of her argument, defendant calls our attention to the precepts frequently cited when statutes are alleged to be so vague that due process is denied. First, a criminal statute is vague that fails to give notice to potential offenders of the prohibited conduct; that notice is inadequate when the terms of the statute are so unclear that people of common intelligence must guess at their meaning. *State v. Young*, 695 S.W.2d 882, 884 (Mo. banc 1985). Additionally, a statute is vague if it lacks explicit standards necessary to avoid arbitrary and discriminatory application by the state. *Id.* Although defendant makes no attempt to apply these precepts to the case at hand, her real argument, we assume, is that *§ 1.205*, as it purports to apply to other statutes, and to *§ 565.024* in particular, is ambiguous; i.e., it is uncertain to which statutes *§ 1.205* applies.

■ We hold, however, for the same reasons used in the statutory construction analysis, that it is clear and certain that *§ 1.205* applies to *§ 565.024*. It is not necessary to postulate other situations in which the statute might be void for vagueness. *Young, supra.* From the express language of *§ 1.205.2* that its provisions apply to the "laws of this state" and by the fact that *§ 1.205* was enacted in conjunction with the involuntary manslaughter statute, defendant was given ample notice that causing the death of an unborn child was proscribed conduct.

## ARTICLE III, § 28 CHALLENGE

■ Defendant's final point is that any legislative intent for *§ 1.205* to apply to the involuntary manslaughter statute is checked by *art. III, § 28*, of the Missouri Constitution, which states:

No act shall be revived or reenacted unless it shall be set forth at length as if it were an original act. No act shall be amended by providing that words be stricken out or inserted, but the words to be stricken out, or the words to be inserted, or the words to be stricken out and those inserted in lieu thereof, together with the act or section amended, *shall be set forth in full as amended.* (emphasis added)

One purpose of *§ 1.205*, as we have construed it, is to substantively amend the involuntary manslaughter statute so that the term "person" will include an unborn child. In *State ex rel. McNary v. Stussie,*

518 S.W.2d 630 (Mo. banc 1974), we addressed a similar situation in which the legislature attempted with one statute to alter the age of majority, from 21 years to 18 years, as it applied to all of the laws of the state, except those pertaining to alcoholic beverages. That blanket amendment violated *art. III, § 28*, because none of the specific statutes sought to be amended were "set forth in full" in the act.

In this case, however, assuming *art. III, § 28* does apply,[5] there is no violation because both statutes, *§ 1.205*, the amending statute, and *§ 565.024*, the statute sought to be amended, are "set forth in full" in the same legislative act.

Defendant suggests that the only way to provide that unborn children are persons is for the legislature to insert those particular words, or words to that effect, into the actual text of *§ 565.024*. Only then, she contends, is there compliance with the provision of *art. III, § 28*, that, "... the act or section amended, shall be set forth in full as amended." But, a statute that by its terms applies to or amends another statute within the same legislative act is, in essence, a part of the other statute as amended. It is constitutionally sufficient if in the same act the amending statute is published in full and the statute sought to be amended is published in full.

In summary, we hold that the provisions of *§ 1.205*—that unborn children are to be considered persons—apply to define the term "person" in the involuntary manslaughter statute. Under *§ 565.024*, causing the death of an unborn child is causing the death of a "person."

The judgment is affirmed.

All concur.

---

.5. There is some question whether *art. III, § 28* applies absent clear language from *§ 1.205*, the amending statute, that words are to be inserted in or stricken from the statute(s) sought to be amended; i.e., it is uncertain whether *§ 1.205* operates to change or amend other statutes in the limited manner specified by *art. III, § 28*, because the amendatory language in *§ 1.205* does not expressly provide that "words be stricken out or inserted...." *See Boyd–Richardson Co. v. Leachman*, 615 S.W.2d 46, 53 (Mo. banc 1981); *State v. Duren*, 547 S.W.2d 476, 481 (Mo. banc 1977).