**STATE of Missouri, Respondent,**

**v.**

**Vicki M. HILL, Appellant.**

**No. WD 54246.**

Missouri Court of Appeals, Western District.

April 20, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 1, 1999.

Application for Transfer Denied Aug. 24, 1999.

---

Martina Peterson, Kansas City, for appellant.

Philip L. Levota, Kansas City, for respondent.

Before HANNA, P.J., ELLIS and RIEDERER, JJ.

ELLIS, Judge.

Vicki Hill appeals from her jury conviction for misdemeanor animal abuse pursuant to § 578.012,[1] for purposely or intentionally causing injury or suffering to an animal. Hill was sentenced to four months in the Jackson County Department of Corrections, with execution of the sentence stayed pending appeal.

On April 21, 1996, at approximately 5:00 p.m., Grandview Police Officers Jeffrey Moreland and Tom Portman responded to 6408 East 150th Street in Grandview, Missouri after being dispatched to a call made from that residence to the Suicide Prevention Hotline. Upon arrival, the officers spoke with the resident, Diane White. Ms.

White informed the officers that she was concerned about a friend of hers that had killed a litter of cats. Ms. White told the officers that her friend had become extremely distraught. Ms. White was currently supervising her friend's six year old son Stephan, who appeared to be upset and scared. Stephan confirmed Ms. White's account that his mother had killed six cats by stabbing them. The officers learned through Stephan and Ms. White that Stephan's mother was Vicki Hill.

Upon learning from White that Hill had killed her cats and might be suicidal, the officers went to Hill's home. As the officers arrived, they noticed a brown Ford Tempo parked in Hill's driveway with a white plastic bag in the front seat. After determining that Hill was not in imminent danger, the officers began to question her about her cats. Hill claimed that she dumped the cats in a parking lot near the VA hospital. While the officers were asking about general information, the police dispatcher radioed Officer Moreland to have him call the station. Officer Moreland did so and learned that the dispatcher had received a phone call claiming that the dead cats were in a bag in a brown car parked outside Hill's house.

Acting on this information, Officer Moreland examined the brown car in Hill's driveway. Moreland observed a whitish colored bag in the front passenger seat. He could see through the bag and saw bunched up newspapers with what appeared to be blood soaking through. Moreland assumed the bag contained the dead cats. When asked about the car, Hill denied being the owner. In response to her denials, Officer Moreland radioed in the car's license plates to determine ownership. The license plates were not on file with the state. The officers asked Hill if she had keys to the car and Hill blurted out, "So I killed a bunch of cats—so what?" The next question asked by the officers was if the cats were in the car and Hill answered "yes." After this admission,

Moreland went to the brown car. Moreland reached into an open window and unlocked the car to retrieve the bag. Upon looking in the bag, Moreland found the six dead cats and placed Hill under arrest. On the way to the station, Moreland asked Hill why she killed her cats. Hill proceeded to give a rambling explanation.

The next morning, Detective McKinstry[2] read Hill her *Miranda* rights and questioned her. Once again, Hill explained that she had killed the cats. On August 20, 1996, a grand jury indicted Hill for purposely causing suffering to six cats as a result of torture and mutilation consciously inflicted while the animals were alive. After a first trial ended in a hung jury, a second jury trial found Hill guilty of misdemeanor animal abuse for intentionally causing injury or suffering to her cats under § 578.012. On March 31, 1997, the trial court denied Hill's motion for a new trial and sentenced Hill to four months in jail.

Hill raises six points on appeal. First, she argues she was not subject to prosecution under § 578.012, because § 578.007(6) exempts an animal's owner from the provisions of §§ 578.005 through 578.023. Second, Hill alleges that the trial court erred in admitting the photographs of the dead cats into evidence, since they are a result of an illegal search and seizure. Third, Hill argues that her statements to the police officers should have been excluded. Fourth, Hill contends that the trial court erred in overruling her *Batson* challenges. Fifth, Hill claims that her statements about the killing were more prejudicial than probative and should have been excluded by the trial court. Finally, Hill asserts that the presence of an animal rights advocate, wearing a suggestive sweatshirt in the courtroom, denied her a fair trial.

Because we conclude that discussion of Hill's last five points would have no prece-

dential value, we will affirm as to those points by summary order pursuant to Rule 30.25(b). We are furnishing the parties a memorandum of the reasons for our decision as to those issues. In this opinion, we address only the issue of whether Hill could be charged and convicted for violation of § 578.012.1(2).

On appeal from a judgment in a jury tried criminal case, we must determine whether there was sufficient evidence from which the jury could have reasonably found guilt beyond a reasonable doubt. *State v. Karr,* 968 S.W.2d 712, 715 (Mo. App. W.D.1998). We accept as true all evidence tending to prove guilt, including all reasonable inferences that support such a finding. *Id.* We ignore any evidence or inferences to the contrary. *Id.*

■ In Hill's first point on appeal, she claims that as the owner of the cats, she cannot be charged under § 578.012. Hill was convicted under § 578.012, which provides:

> 1. A person is guilty of animal abuse when a person:
>
> > (1) Intentionally or purposely kills an animal in any manner not allowed by or expressly exempted from the provisions of sections 578.005 to 578.023 and 273.030, RSMo;
> >
> > (2) Purposely or intentionally causes injury or suffering to an animal; or
> >
> > (3) Having ownership or custody of an animal knowingly fails to provide adequate care or adequate control.

Specifically, Hill was found guilty of violating subdivision (2), purposely or intentionally causing injury or suffering to an animal. Section 578.007(6), which contains exceptions to the animal abuse statutes, declares that "[t]he provisions of sections 578.005 to 578.023 shall not apply to [t]he killing of an animal by the owner thereof, . . ." Hill argues that since § 578.007(6) excepts the killing of an animal by its

**2.** Detective McKinstry's name is spelled as either McKinstry or McInstry. The detective's name is spelled differently in the tran-

script, the appellant's brief, and the respondent's brief. This court uses the spelling found in the court transcripts.

owner from the provisions §§ 578.005 through 578.023, and she was the owner of the cats, she cannot be charged under § 578.012.

■ In construing statutes, we must "ascertain the intent of the lawmakers from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning." *State v. Knapp*, 843 S.W.2d 345, 347 (Mo. banc 1992), *quoting State v. Kraus*, 530 S.W.2d 684, 685 (Mo. banc 1975). In the case of § 578.012, the three numerical subdivisions and the use of the word "or" at the end of subdivision (2) conclusively establish an intent on the part of the Legislature to provide three separate alternative grounds upon which one can be charged with animal abuse.

Section 578.012.1(1) criminalizes intentionally or purposely "*killing*" an animal in any manner not permitted or exempted by statutes set forth therein. Section 578.007(6) provides that §§ 578.005 to 578.023 do not apply to the "*killing*" of an animal by the owner thereof. Thus, § 578.007(6) applies to prevent the owner of an animal from being charged with intentionally or purposely "*killing*" an animal in violation § 578.012.1(1).

■ However, Hill was found guilty of violation of § 578.012.1(2), purposely or intentionally causing injury or suffering to an animal. The latter subdivision is not premised on the "*killing*" of an animal, but rather causing injury or suffering to an animal. Owners of animals are not exempted by § 578.007(6) from being charged with purposely or intentionally causing injury or suffering to an animal, but rather only from being charged with violation of the act by "*killing*" their animals. Accordingly, § 578.007(6) did not preclude Hill from being charged and prosecuted for animal abuse by intentionally and purposely causing injury or suffering to her cats in violation of § 578.012.1(2).

Nevertheless, Hill contends that it is impossible to kill an animal without inflicting injury or suffering to the animal. At first blush, Hill's argument tends to make sense for it would seem that there would almost always be some injury or suffering when an animal is killed. However, it is not the incidental infliction of suffering in the process of humanely killing an animal that the statute prohibits. Rather, it is the *purposeful* and *intentional* infliction of injury and suffering. The statutory emphasis, and the crux of the offense, is the intent or desire to inflict injury and suffering.

■ In this case, there was sufficient evidence for the jury to reasonably find Hill guilty of purposely and intentionally inflicting injury and suffering. The record indicates that Hill initially stabbed the mother cat out of rage. By her own account, it was only then that she decided to put the cat out of its misery. Then she proceeded to slice the cat open from throat to groin. From this it can be inferred that the cat was still alive after she first stabbed it in a fit of rage. In addition, each of the five kittens bore multiple stab wounds, with each having been stabbed at least four times. Moreover, Hill's own expert, Dr. Swoope, testified that he would never operate on an animal i.e., make a four inch incision in a cat, without first administering anesthesia because the animal would suffer. All of this evidence permits a reasonable juror to find beyond a reasonable doubt that Hill's purpose was to inflict injury and suffering on the animals, not just kill them. Point one is denied.

The judgment of conviction and the sentence in this case are affirmed. A memorandum discussing the points not covered in this opinion has been furnished to the parties pursuant to Rule 30.25(b).

All concur.