# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 99-2976

_____

Union Pacific Railroad Company,     \*

     \*

     Appellant,     \*

     \*     Appeal from the United States

     v.     \*     District Court for the

     \*     Eastern District of Missouri.

St. Louis Marketplace, Limited     \*

Partnership; Thomas A. Villa, Michael     \*

Sheehan; Jack Garvey; Claude Taylor;     \*

Geraldine Osborn, Assistant to the     \*

President; Francis Slay, Honorable,     \*

President; Irene J. Smith, Honorable, 1st     \*

Ward; Nancy S. Weber, Honorable, 2nd     \*

Ward; Freeman Bosley, Sr., Honorable,     \*

3rd Ward; Bertha Mitchell, Honorable,     \*

4th Ward; Mary Ross, Honorable, 5th     \*

Ward; Marit Clark, Honorable, 6th     \*

Ward; Phyllis Young, Honorable, 7th     \*

Ward; Stephen J. Conway, Honorable,     \*

8th Ward; Martie J. Aboussie,     \*

Honorable, 9th Ward; Craig Schmid,     \*

Honorable, 10th Ward; Daniel Gruen,     \*

Honorable, 11th Ward; Fred Heitert,     \*

Honorable, 12th Ward; Alfred Wessels,     \*

Jr., Honorable, 13th Ward; Marge     \*

Vining, Honorable, 15th Ward; James     \*

Shrewsberry, Honorable, 16th Ward;     \*

Joseph D. Roddy, Honorable, 17th     \*

Ward; Terry Kennedy, Honorable, 18th     \*

Ward; Velma Bailey, Honorable, 19th     \*

Ward; Sharon Tyus, Honorable, 20th     \*

Ward; Bernice Jones King, 21st Ward;     *
Kenneth Jones, Honorable, 22nd Ward;    *
Jim Sonderman, Honorable, 23rd Ward;    *
Robert Ruggeri, Honorable, 24th Ward;    *
Paul Beckerle, Honorable, 25th Ward;      *
Irving C. Clay, Honorable, 26th Ward;      *
Gregory Carter, Honorable, 27th Ward;    *
Daniel McGuire, Honorable, 28th Ward,  *
individually and in their official              *
capacities as members of the Board of    *
Alderman of the City of St. Louis,           *
Missouri; Vincent C. Schoemehl, Jr.,       *
individually, and in his official capacity  *
as Mayor of the City of St. Louis,           *
Missouri; Virvus Jones, individually,       *
and in his official capacity as               *
Comptroller of the City of St. Louis,        *
                                                            *
                    Appellees.            *

_____

Submitted: February 16, 2000

Filed: May 3, 2000
_____

Before RICHARD S. ARNOLD, HEANEY and LOKEN, Circuit Judges.
_____

HEANEY, Circuit Judge.


Union Pacific Railroad Company (Union Pacific) appeals the district court's judgment in its suit against former officials of the City of St. Louis (City) and others. We affirm in part and reverse in part.

-2-

# I. BACKGROUND

In 1990, the City and two private entities, Midland Equities, Inc. and St. Louis Marketplace Limited Partnership, initiated an effort to redevelop an area of the City along Manchester Avenue occupied by the abandoned Scullin Steel facility. The redevelopment plan called for the construction of the St. Louis Marketplace, a 461,000 square foot retail shopping center funded in part by public monies raised through tax increment financing (TIF). Because of practical and logistical concerns, the project required that Manchester Avenue be widened, which in turn required the relocation of railroad tracks belonging to Missouri Pacific Railroad Company. Relocating the tracks entailed moving 1.2 miles of two mainline railroad tracks, realignment of a railroad bridge, and purchase of some 45 private residences that occupied the new right-of-way. The City's participation in the project was enabled by the Board of Aldermen's (Board) passage of a number of ordinances that approved the formal plan, authorized the City to enter into a redevelopment contract with the private developers, and authorized the issuance of TIF bonds.

The details of the agreement were set forth in a 1991 Redevelopment Contract and simultaneous Public Improvements Agreement. Under the Public Improvements Agreement, Missouri Pacific agreed to enable the widening of Manchester Avenue by exchanging its existing right-of-way for the new right-of-way, and by providing the engineering services necessary to design and construct the new tracks. The City agreed to pay the private developers approximately $9.2 million for the existing right-of-way through advances of TIF proceeds. The private developers would pay Missouri Pacific all reasonable costs it incurred in relocating its tracks, as well as some $143,000 representing the difference in value between the existing tracks and the new tracks.

The Redevelopment Contract provided, inter alia, that the private developers

shall before the commencement of any work in connection with the Substitute Railroad Facility tender for approval to the City proof of … performance, labor and material payment bonds as are acceptable to and enforceable by the City … in all cases in such amounts and issued or made by such companies or sureties and in such forms as are acceptable to the City. Any such bond shall name the City as an obligee. Copies of certificates of such insurance or bonds shall be delivered to the City.

(App. at 289-90.) The Redevelopment Contract was incorporated by reference in Ordinance No. 62044, an ordinance passed by the Board authorizing the execution of the contract.

Missouri Pacific eventually finished the relocation work, and took title to the new right-of-way. The old right-of-way was dedicated to widening Manchester Avenue, and the shopping center project was ultimately completed. However, the private developers failed to pay all of Missouri Pacific's costs in relocating the railroad tracks: the railroad submitted to the private developers invoice statements for its relocation labor and material totaling $2,484,557.13, of which $705,801 has been paid. Neither the City nor the private investors acquired the payment bond contemplated in the contract to ensure that Missouri Pacific would be paid.

Missouri Pacific commenced this suit in the district court against the private developers and the City's former mayor, comptroller, and Board members. Missouri Pacific has since merged into Union Pacific, which has become the real party in interest. In counts I and II, Union Pacific sought to recover from the private developers the unpaid relocation expenses under breach-of-contract and quantum meruit theories, respectively. In count III, the railroad sued the City officials, claiming their failure to obtain a bond violated Mo. Ann. Stat. § 107.170 (West 1986), which provided:

It is hereby made the duty of all officials, boards, commissions, commissioners, or agents of this state, or of any county, city, town, township, school, or road district in this state in making contracts for

-4-

public works of any kind to be performed for the state, or for such county, city, town, township, school, or road district, to require every contractor of such work to furnish to the state, or to such county, city, town, township, school, or road district, as the case may be, a bond with good and sufficient sureties, in an amount fixed by said officials . . . and such bond, among other conditions, shall be conditioned for the payment of any and all materials . . . consumed or used in connection with the construction of such work . . . and for all labor performed in such work whether performed by subcontractor or otherwise.

After Union Pacific obtained a consent judgment with respect to its claims against Midland, the remaining claims were tried before the court. In a March 1999 decision, the court found in favor of Union Pacific on its quantum meruit claim against St. Louis Marketplace Limited Partnership, but rejected the railroad's § 107.170 claims against City officials. See Union Pac. R.R. Co. v. Midland Equities, Inc., 45 F. Supp.2d 685 (E.D. Mo. 1999).

First, the court determined that the railroad relocation work was a "public works project" within the meaning of the statute. The court concluded that the track relocation work was for a public use and benefit because (1) the relocation of the tracks permitted the widening of Manchester Avenue; (2) the payment arrangements were City-approved; (3) the private developers' plans for relocating the tracks were subject to the approval, customary requirements, and supervision of the City's Board of Public Service; and (4) the redevelopment plan was in the public interest. The court rejected the City defendants' argument that § 107.170 did not apply to the railroad project because the railroad could have obtained a mechanic's lien against the property. The court also determined that the individual City officials were properly named as defendants. See id. at 696-700.

The court concluded, however, that the City defendants were protected from liability under the official immunity doctrine. The court held that the ministerial component of compliance with § 107.170 was satisfied by the Board's passage of

-5-

Ordinance No. 62044. In the court's view, the remaining administrative steps to ensure compliance with the bond requirement were discretionary in nature, and the City defendants were therefore entitled to official immunity from any claims arising out of their failure to perform those administrative steps. See id. at 700.

Union Pacific appeals, arguing the district court incorrectly applied Missouri official-immunity doctrine. The City defendants contend the court's decision was correct, and argue in the alternative that railroad relocation project was not a public works project subject to the bonding requirements of § 107.170.

## II. DISCUSSION

We review de novo the district court's interpretation of Missouri law. See Nanninga v. Three Rivers Elec. Coop., 203 F.3d 529, 531 (8th Cir. 2000). Initially, we agree with the district court that the railroad relocation project was a public works project covered by § 107.170. In its present incarnation, the statute defines "public works" as "the erection, construction, alteration, repair or improvement of any building, road, street, public utility or other public facility owned by [a] public entity." Mo. Ann. Stat. § 107.170(1) (West Supp. 2000). Under this definition, Union Pacific's work would not have been protected by § 107.170, because the relocated right-of-way belonged to Midland up until May 1992, when it was transferred to the railroad.

However, at the time relevant to this action, § 107.170 did not define "public works." See § 107.170 (1986). We believe the district court correctly looked to contemporaneous statutory definitions of "public works" in determining the reach of § 107.170, rather than looking to the definition supplied by a later enactment. See Missouri Comm'n on Human Rights v. Red Dragon Restaurant, Inc., 991 S.W.2d 161, 167 (Mo. Ct. App. 1999) ("[I]t is presumed that in enacting a new statute or amending an existing one, the legislature intended to effect some change in the existing law"); State v. Knapp, 843 S.W.2d 345, 347 (Mo. 1992) (en banc) (holding that court

construing undefined statutory term should consider "statutes involving similar or related subject matter when those statutes shed light on the meaning of the statute being construed"). As the district court noted, "public works" was defined in the Prevailing Wages on Public Works Act as "all fixed works constructed for public use or benefit paid for wholly or in part out of public funds." Mo. Rev. Stat. 290.210 (1986). Using this contemporaneous definition, we agree with the district court that the railroad relocation component of the redevelopment plan constituted a public benefit. See Maurer v. Werner, 748 S.W.2d 839, 841 (Mo. Ct. App. 1988) (looking to § 290.210 to support "broad interpretation" of "public works" under § 107.170).

As the district court recognized, "[t]he widening of Manchester [Avenue] was critical to the ability of the City, Midland, and St. Louis Marketplace to structure the project as a TIF project," Union Pacific, 45 F. Supp.2d at 697, and the widening of Manchester Avenue would not have been possible without relocating Union Pacific's tracks. Contrary to the City's assertion that the railroad relocation project entailed primarily a private benefit, the preamble to the Public Improvements Agreement reflects the public significance of this segment of the plan:

> [C]ertain parcels of real estate . . . are owned by the Railroad or if applicable, controlled by the Railroad pursuant to an easement interest therein, and scheduled for acquisition and redevelopment by the City as part of those public improvement projects[.]

> [T]he City has determined it must acquire the Existing Right-of-Way and the Fee Parcel for the purpose of constructing certain roadway improvements, including, but not limited to road surfaces, medians, sidewalks, curbing, lighting and landscaping[.]

> [T]he City has determined that acquisition of the Existing Right-of-Way and Fee Parcel and construction of such roadway improvements are in the best interest of all of the citizens of the City[.]

(App. at 382.) We thus conclude that the bonding requirements of § 107.170 were applicable to the railroad relocation project.

At this point, however, we must part company with the district court. We are unable to conclude, as did the district court, that the defendants fulfilled all of the ministerial duties imposed on them by § 107.170. See Lynn v. T.I.M.E.-D.C., Inc., 710 S.W.2d 359, 361 (Mo. Ct. App. 1986). Union Pacific may recover only from those City officials, if any, who failed to perform ministerial duties imposed by § 107.170. Missouri courts explain the distinction between discretionary and ministerial duties this way:

> A ministerial function is one of a clerical nature which a public officer is required to perform in obedience to a legal mandate, without regard to his own judgment or opinion. A discretionary function, in contrast, is one which requires the exercise of reason in the adaptation of means to an end, and discretion in determining how or whether an act should be done or a course pursued.

Id. (citations omitted). Although we agree that the Board discharged its ministerial duties by passage of the ordinance incorporating the contract requirement for a performance bond, we believe § 107.170 also saddled the mayor and the comptroller with ministerial duties.

Missouri case law provides us with limited guidance in delineating the duties imposed upon the City officials by § 107.170 or in determining which of those duties are ministerial and which are discretionary. The statute does not prescribe the means by which an official is to determine whether a particular bond is "good and sufficient"; accordingly, that determination is a discretionary act for which officials enjoy immunity. See George Weis Co. v. Dwyer, 956 S.W.2d 335, 338 (Mo. Ct. App. 1997); S & W Cabinets, Inc. v. Consolidated Sch. Dist. No. 6, 901 S.W.2d 266, 269 (Mo. Ct. App. 1995). Regardless of the sufficiency of the bond, however, officials

have a ministerial duty to require a bond of some form, and are not entitled to official immunity where they have made no effort to require a bond at all. See C.A. Burton Mach. Co. v. Ruth, 186 S.W. 737, 738-39 (Mo. Ct. App. 1916).

Neither the statute nor Missouri case law tells us precisely how particular officials fulfill their ministerial duty to require a bond. We believe it is appropriate to delimit the scope of that duty by reference to the functions of each office. In other words, the ministerial actions an official must take to "require" a bond depend upon that official's role within the structure of City governance. Cf. Charron v. Thompson, 939 S.W.2d 885, 886 (Mo. 1996) (en banc) ("Whether a function is discretionary or ministerial is a case by case determination to be made after weighing such factors as the nature of the official's duties, the extent to which the acts involve policymaking or the exercise of professional expertise and judgment." (internal quotations omitted)). If an official is, given their role in City governance, empowered to take steps of a ministerial nature to ensure fulfillment of § 107.170's mandate, the failure to take such action may be the basis for personal liability.

Given that the Board transformed the contractual bond requirement into a legal requirement by passing the ordinance incorporating the contract, we are hard-pressed to identify any further ministerial steps that the Board could have undertaken to ensure compliance with § 107.170. This is because the Board's function as a legislative body necessarily limited its power to ensure compliance with the ordinance. We therefore affirm the district court's determination that the Board members are entitled to official immunity.

The mayor and comptroller, however, have very different roles. The mayor "exercise[s] a general supervision over all the executive affairs of the city and see[s] that each officer and employee performs his duty and that all laws, ordinances, and charter provisions are enforced within the city." Saint Louis, Mo., City Charter art. VII, § 1. The comptroller is "the head of the department of finance and exercise[s] a

general supervision over its divisions, over all the fiscal affairs of the city and over all its property, assets and claims, and the disposition thereof." Id. art. XV, § 2. In light of this broad supervisory authority and the legal mandate established by the Board's passage of Ordinance No. 62044, we conclude that the mayor and comptroller are not entitled to official immunity for failing to ensure that the private developers satisfied § 107.170's bonding requirement.

Although the funding arrangements for the project were complex, the essential feature of the public improvements portion was the payments from the City to the private developers, who in turn reimbursed Missouri Pacific. At the most basic level, the mayor and comptroller were responsible for requiring a bond by withholding TIF funds until the private developers furnished a bond, an action clearly encompassed by the Board's legal mandate, authorized by authority granted the mayor and comptroller by the City's Charter, and thoroughly ministerial in nature. For this reason, we believe the district court erred in holding that the ministerial duties of all City defendants were discharged by the Board's passage of the Ordinance No. 62044.

## III. CONCLUSION

The matter is remanded to the district court for further proceedings not inconsistent with this opinion.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-