**STATE of Missouri, Respondent,**

v.

**John William HARRISON, Appellant.**

**No. SD 31374.**

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 4, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 13, 2013.

Fawzy T. Simon, Lebanon, MO, for Appellant.

Chris Koster, Attorney General, Karen Louise Kramer, Asst. Atty. Gen., for Respondent.

DANIEL E. SCOTT, P.J.

Can manslaughter lie for killing an unborn child if, per § 194.005, death involves cessation of spontaneous respiration?[1]

## Background

Appellant was found guilty of involuntary manslaughter (§ 565.024) in the deaths of his girlfriend ("Mother") and her unborn child. He challenges only his conviction as to the child.[2] The evidence viewed favorably to the judgment is easily summarized.

On November 9, 2008, Mother was riding with Appellant when his speeding pickup left the roadway, rolled down an embankment, and came to rest on its top near a ravine. Mother was pronounced dead at the scene. Appellant, whose blood alcohol exceeded the legal limit, indicated that he thought Mother was two months pregnant.

Mother had repeatedly tested positive for pregnancy. On October 30, an obstetrician performed a vaginal probe ultrasound and saw a possible gestational sac. Mother denied any spotting, bleeding, or cramping (symptoms of miscarriage) and had not been on birth control. At trial, the obstetrician indicated that Mother had been less than six weeks pregnant, but "[b]eyond a reasonable doubt she was pregnant the day that I saw her in the office," then reiterated that he had no doubt about that.

## Sufficiency of Evidence

■ We reject Appellant's claim that the State did not sufficiently prove that Mother was pregnant when the accident occurred. In determining whether the trial court could find this beyond a reasonable doubt, we consider only favorable evidence and its reasonable inferences, ignoring all contrary evidence and inferences. *State v. Davis,* 71 S.W.3d 659, 664 (Mo.App.2002).

On this record, the court could find that Mother was pregnant on October 30, and could reasonably infer that she was still pregnant ten days later. Point denied.

## UDDA Argument

■ Appellant also argues that his conviction cannot be squared with a § 194.005 UDDA definition of death—fetal respiration, for example, could not cease if it never began. Urging that § 194.005 cannot be harmonized with § 1.205 (see *infra*), he asks us to apply the rule of lenity and vacate his conviction. His novel

1. Statutes cited are RSMo 2000. Missouri's version of the Uniform Determination of Death Act (UDDA) is codified as § 194.005:
   For all legal purposes, the occurrence of human death shall be determined in accordance with the usual and customary standards of medical practice, provided that death shall not be determined to have occurred unless the following minimal conditions have been met:
   (1) When respiration and circulation are not artificially maintained, there is an irreversible cessation of spontaneous respiration and circulation; or
   (2) When respiration and circulation are artificially maintained, and there is a total and irreversible cessation of all brain function, including the brain stem and that such determination is made by a licensed physician.

2. Thus, our further references to his "conviction" refer only to that aspect.

claims[3] does not convince us for several reasons.

### UDDA Focus

The UDDA, which superseded the Uniform Brain Death Act (1978), was approved by the National Conference of Commissioners on Uniform State Laws in 1980. Based on a ten-year evolution of statutory language involving some 25 state legislatures, the UDDA addressed "modern advances in lifesaving technology. A person may be artificially supported for respiration and circulation after all brain functions cease irreversibly." *Prefatory Note,* UNIF. DET. OF DEATH ACT, 12A U.L.A. 778 (2008).

> The genesis of the UDDA can be traced to "improvements in resuscitative and supportive measures," contributing to a widely recognized need for the "formulation of a new criteria of death [in order] to deal with (1) increased *[long-term-care] burdens on patients, families, and hospital resources* ... and (2) an obsolete criteria for determining death leading to a controversy in *organ transplantation."*

*Ziade v. Koch,* 952 So.2d 1072, 1079–80 (Ala.2006) (quoting Samantha Weyrauch, *Acceptance of Whole–Brain Death Criteria for Determination of Death: A Comparative Analysis of the United States and Japan,* 17 UCLA PAC. BASIN L.J. 91, 96–99 (1999)). The UDDA and its predecessors share one principal goal—to extend the common law to include new techniques for determining death. *Prefatory Note, supra,* 12A U.L.A. 778. Most states have adopted the UDDA in some form; Missouri did so in 1982 as § 194.005.

### Unborn Manslaughter Victims and § 1.205

Four years after adopting the UDDA, our legislature addressed the other end of the spectrum, declaring in § 1.205 that human life begins at conception, and that unborn children, from conception until birth, have protectable interests in life, health, and well-being.

The same act, H.B. 1596, also amended § 565.024 such that an unborn child could be the victim of involuntary manslaughter. *See State v. Knapp,* 843 S.W.2d 345, 347–49 & n. 2 (Mo. banc 1992), which found "clear" legislative intent for this in particular. *Id.* at 347. In two decades since *Knapp,* the legislature has expressed no disagreement.

### Rule of Lenity

■ The rule of lenity lies only when, even after seizing all sources of aid, we can no more than guess as to what our legislature intended. *State v. Ondo,* 232 S.W.3d 622, 628 (Mo.App.2007). That is not the case here. H.B. 1596, per *Knapp,* reflects clear legislative intent as to manslaughter of the unborn. The UDDA was adopted earlier to address different concerns.

■ We recognize "that ambiguities in statutes in criminal cases must be construed against the State, but this rule of strict construction does not require that the court ignore either common sense or evident statutory purpose." *Knapp,* 843 S.W.2d at 347. All life that begins at conception must die, sometimes—naturally or otherwise—prior to birth. To ascribe to legislators an intent to decree otherwise would be, if not absurd, at least so unreasonable that we will not do so.

---

**3.** Appellant may be correct in suggesting that this is a case of first impression. Despite widespread UDDA acceptance, we find no similar claim, comparable case, or helpful commentary anywhere.

This unborn child could not survive Mother's death. Given *Knapp*, our legislature's refusal to renounce its intent as interpreted therein, and the UDDA's different focus, we deny this point and affirm the conviction.

JEFFREY W. BATES, J. and MARY W. SHEFFIELD, J., Concur.